# SHERIDAN ET UX. *v.* UNITED STATES

No. 87–626.    Argued April 26, 1988—Decided June 24, 1988

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, and BLACKMUN, JJ., joined. WHITE, J., filed a concurring opinion, *post*, p. 403. KENNEDY, J., filed an opinion concurring in the judgment, *post*, p. 404. O'CONNOR, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 408.

*Michael J. Kator* argued the cause for petitioners. With him on the briefs was *Irving Kator*.

*Christopher J. Wright* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Bolton, Deputy Solicitor General Ayer*, and *Anthony J. Steinmeyer*.*

JUSTICE STEVENS delivered the opinion of the Court.

On February 6, 1982, an obviously intoxicated off-duty serviceman named Carr fired several rifle shots into an automobile being driven by petitioners on a public street near the

*Briefs of *amici curiae* urging reversal were filed for George Bennett et al. by *Roy B. Ward, Martha Blue*, and *Dale Itschner;* and for John Doe One et al. by *James P. Cunningham*.

Bethesda Naval Hospital. Petitioners brought suit against the United States alleging that their injuries were caused by the Government's negligence in allowing Carr to leave the hospital with a loaded rifle in his possession. The District Court dismissed the action—and the Court of Appeals affirmed—on the ground that the claim is barred by the intentional tort exception to the Federal Tort Claims Act (FTCA or Act). The question we granted certiorari to decide is whether petitioners' claim is one "arising out of" an assault or battery within the meaning of 28 U. S. C. § 2680(h).[1]

## I

When it granted the Government's motion to dismiss, the District Court accepted petitioners' version of the facts as al-

---

[1] Title 28 U. S. C. § 2680 provides in part:

"The provisions of [28 U. S. C. §§ 2671–2680] and section 1346(b) of this title shall not apply to—

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of [28 U. S. C. §§ 2671–2680] and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

Title 28 U. S. C. § 1346(b) provides in part:

"Subject to the provisions of [28 U. S. C. §§ 2671–2680], the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

leged in their complaint and as supplemented by discovery. That version may be briefly stated. After finishing his shift as a naval medical aide at the hospital, Carr consumed a large quantity of wine, rum, and other alcoholic beverages. He then packed some of his belongings, including a rifle and ammunition, into a uniform bag and left his quarters. Some time later, three naval corpsmen found him lying face down in a drunken stupor on the concrete floor of a hospital building. They attempted to take him to the emergency room, but he broke away, grabbing the bag and revealing the barrel of the rifle. At the sight of the rifle barrel, the corpsmen fled. They neither took further action to subdue Carr, nor alerted the appropriate authorities that he was heavily intoxicated and brandishing a weapon. Later that evening, Carr fired the shots that caused physical injury to one of the petitioners and property damage to their car.

The District Court began its legal analysis by noting the general rule that the Government is not liable for the intentional torts of its employees. The petitioners argued that the general rule was inapplicable because they were relying, not on the fact that Carr was a Government employee when he assaulted them, but rather on the negligence of other Government employees who failed to prevent his use of the rifle. The District Court assumed that the alleged negligence would have made the defendant liable under the law of Maryland, and also assumed that the Government would have been liable if Carr had not been a Government employee. Nevertheless, although stating that it was "sympathetic" to petitioners' claim, App. to Pet. for Cert. 26a, it concluded that Fourth Circuit precedents required dismissal because Carr "happens to be a government employee rather than a private citizen," id., at 23a.

The Court of Appeals affirmed. 823 F. 2d 820 (CA4 1987). Like the District Court, it concluded that the Circuit's prior decisions in *Hughes* v. *United States*, 662 F. 2d 219 (CA4 1981) *(per curiam)*, and *Thigpen* v. *United States*, 800 F. 2d

393 (CA4 1986),[2] foreclosed the following argument advanced by petitioners:

> "The Sheridans also argue that Carr's status as an enlisted naval man and, therefore, a government employee, should [be] irrelevant to the issue of the government's immunity *vel non* from liability for negligently failing to prevent the injury. They correctly assert that the shooting at the Sheridans' vehicle was not connected with Carr's job responsibility or duties as a government employee. The Sheridans further assert that if Carr had not been a government employee, a claim would undoubtedly lie against the government and § 2680(h) would be inapplicable. *See Rogers* v. *United States,* 397 F. 2d 12 (4th Cir. 1968) (holding § 2680(h) inapplicable where probationer alleged that negligence by United States marshal allowed non-government employee to assault and torture probationer). They contend it is anomalous to deny their claim simply because the corpsmen were negligent in the handling of a government employee

---

[2] The Court of Appeals explained its prior decisions as follows:

"In *Hughes* we affirmed the district court's dismissal of a claim against the government because it fell within [the intentional tort] exception. There, a postal employee, while on his route, lured two young girls into his postal truck and committed sexual indecencies. He had previously pled guilty to a similar offense. The parents of the children brought an action against the government under the Federal Tort Claims Act alleging the postal supervisor was negligent in allowing the employee to remain in a position where he came into contact with young children. The district court, reasoning that the cause of action arose from the intentional act of the employee and not from the negligence of the supervisor, held the claim barred by § 2680(h).

". . . In *Thigpen,* a naval corpsman had committed sexual indecencies with two minor girls while they were hospitalized in a naval hospital. An action was brought on behalf of the children contending that the Navy negligently failed to supervise the offending corpsman. There, too, the district court reasoned that the injury resulted from the intentional tort of the corpsman and not from a lack of supervision by the government." 823 F. 2d, at 822.

rather than a private citizen." 823 F. 2d, at 822 (foot-
notes omitted).

In dissent, Chief Judge Winter argued that cases involving
alleged negligence in hiring or supervising Government em-
ployees are not applicable to a situation in which the basis for
the Government's alleged liability has nothing to do with the
assailant's employment status. He wrote:

> "As the majority opinion concedes . . . , *Hughes* and
> *Thigpen*, as well as the other cases relied upon by the
> majority . . . , are all cases where the purported govern-
> ment negligence was premised solely on claims of negli-
> gent hiring and/or supervision. The same was true in
> *United States* v. *Shearer*, [473 U. S. 52 (1985)]. Such
> claims are essentially grounded in the doctrine of re-
> spondeat superior. In these cases, the government's li-
> ability arises, if at all, *only* because of the employment
> relationship. If the assailant were not a federal em-
> ployee, there would be no independent basis for a suit
> against the government. It is in this situation that an
> allegation of government negligence can legitimately be
> seen as an effort to 'circumvent' the § 2680(h) bar; it is
> just this situation—where government liability is possi-
> ble only because of the fortuity that the assailant hap-
> pens to receive federal paychecks—that § 2680(h) was
> designed to preclude. *See Shearer*, [473 U. S., at 54–
> 57]; *Hughes*, 514 F. Supp. at 668, 669–70; *Panella* v.
> *United States*, 216 F. 2d 622, 624 (2 Cir. 1954).
>
> "On the other hand, where government liability is in-
> dependent of the assailant's employment status, it is pos-
> sible to discern two distinct torts: the intentional tort
> (assault and battery) and the government negligence
> that precipitated it. Where no reliance is placed on neg-
> ligent supervision or respondeat superior principles, the
> cause of action against the government cannot really be
> said to 'arise out of' the assault and battery; rather it is

based on the government's breach of a separate legal duty." *Id.*, at 824 (footnote omitted).

The difference between the majority and the dissent in this case is reflected in conflicting decisions among the Circuits as well.[3] We therefore granted certiorari to resolve this important conflict. 484 U. S. 1024 (1988).

## II

The FTCA gives federal district courts jurisdiction over claims against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346(b). However, among other limitations, the Act also provides that this broad grant of jurisdiction "shall not apply to . . . [a]ny claim arising out of assault, battery" or other specified intentional torts. 28 U. S. C. § 2680(h).

The words "any claim arising out of" an assault or battery are unquestionably broad enough to bar all claims based *entirely* on an assault or battery. The import of these words is less clear, however, when they are applied to a claim arising out of two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence. Nonetheless, it is both settled and undisputed that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur. Thus,

---

[3] See, *e. g.*, *Doe* v. *United States*, 838 F. 2d 220 (CA7 1988); *Morrill* v. *United States*, 821 F. 2d 1426 (CA9 1987) *(per curiam)*; *Kearney* v. *United States*, 815 F. 2d 535 (CA9 1987); *Bennett* v. *United States*, 803 F. 2d 1502 (CA9 1986); *Hoot* v. *United States*, 790 F. 2d 836 (CA10 1986); *Johnson* v. *United States*, 788 F. 2d 845 (CA2), cert. denied, 479 U. S. 914 (1986).

in *United States* v. *Muniz*, 374 U. S. 150 (1963), we held that a prisoner who was assaulted by other inmates could recover damages from the United States because prison officials were negligent in failing to prevent the assault that caused his injury.[4]

Two quite different theories might explain why Muniz' claim did not "arise out of" the assault that caused his injuries. First, it might be assumed that since he alleged an independent basis for tort liability—namely, the negligence of the prison officials—the claim did not arise solely, or even predominantly, out of the assault. Rather, the attention of the trier of fact is focused on the Government's negligent act or omission; the intentional commission is simply considered as part of the causal link leading to the injury. Under this view, the assailant's individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could, provided of course that similar negligent conduct would support recovery under the law of the State where the incident occurred. See Note, Section 2680(h) of the Federal Tort Claims Act: Government Liability for the Negligent Failure to Prevent an Assault and Battery by a Federal Employee, 69 Geo. L. J. 803, 822–825 (1981) (advocating this view and collecting cases).

---

[4] *Muniz* involved two separate suits consolidated for our consideration. We described the relevant facts of one of the actions as follows:

"Respondent Muniz alleged that he was, in August 1959, a prisoner in a federal correctional institution in Danbury, Connecticut. On the afternoon of August 24, Muniz was outside one of the institution's dormitories when he was struck by an inmate, and then pursued by 12 inmates into another dormitory. A prison guard, apparently choosing to confine the altercation instead of interceding, locked the dormitory. The 12 inmates who had chased Muniz into the dormitory set upon him, beating him with chairs and sticks until he was unconscious. Muniz sustained a fractured skull and ultimately lost the vision of his right eye. He alleged that the prison officials were negligent in failing to provide enough guards to prevent the assaults leading to his injuries and in letting prisoners, some of whom were mentally abnormal, intermingle without adequate supervision." 374 U. S., at 152.

In response to this theory, the Government argues that the "arising out of" language must be read broadly and that the Sheridans' negligence claim is accordingly barred, for in the absence of Carr's assault, there would be no claim. We need not resolve this dispute, however, because even accepting the Government's contention that when an intentional tort is a *sine qua non* of recovery the action "arises out of" that tort, we conclude that the exception does not bar recovery in this case. We thus rely exclusively on the second theory, which makes clear that the intentional tort exception is simply inapplicable to torts that fall outside the scope of § 1346(b)'s general waiver.

This second explanation for the *Muniz* holding, which is narrower but not necessarily inconsistent with the first, adopts Judge (later Justice) Harlan's reasoning in *Panella* v. *United States*, 216 F. 2d 622 (CA2 1954). In that case, as in *Muniz*, a prisoner claimed that an assault by another inmate had been caused by the negligence of federal employees. After recognizing that the "immunity against claims arising out of assault and battery can literally be read to apply to assaults committed by persons other than government employees," *id.*, at 624, his opinion concluded that § 2680(h) must be read against the rest of the Act. The exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity. Since an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees.

In describing the coverage of the FTCA, Judge Harlan emphasized the statutory language that was critical to his analysis. As he explained, the Act covers actions for personal injuries "caused by the negligent or wrongful act or omission *of any employee of the Government* while acting within the scope of his office or employment . . . (Italics supplied)."

*Id.*, at 623.   We need only move the emphasis to the next phrase—"while acting within the scope of his office or employment"—to apply his analysis to the assault and battery committed by the off-duty, inebriated enlisted man in this case.   If nothing more was involved here than the conduct of Carr at the time he shot at petitioners, there would be no basis for imposing liability on the Government.   The tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability whether that conduct is intentional or merely negligent.

As alleged in this case, however, the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of Carr's employment status.   By voluntarily adopting regulations that prohibit the possession of firearms on the naval base and that require all personnel to report the presence of any such firearm,[5] and by further voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to "perform [its] 'good Samaritan' task in a careful manner."   *Indian Towing Co.* v. *United States*, 350 U. S. 61, 65 (1955).   The District Court and the Court of Appeals both assumed that petitioners' version of the facts would support recovery under Maryland law on a negligence theory if the naval hospital had been owned and operated by a private person.   Although the Government now disputes this assumption, it is not our practice to reexamine a question of state law of that kind or, without good reason, to pass upon it in the first instance.[6]   See *Cort* v.

---

[5] Allegedly, Carr's roommate was aware that Carr improperly possessed a firearm prior to the shooting incident, yet failed to comply with Navy regulations requiring that he report this violation to the appropriate authorities.

[6] The Government did not challenge this assumption before the District Court or the Court of Appeals.   Its failure to do so may well simply be a

*Ash,* 422 U. S. 66, 73, n. 6 (1975).  On this assumption, it seems perfectly clear that the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor in the hospital.  Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr was on a federal payroll.[7]

product of the Government's view that the District Court was without jurisdiction and thus, presumably, had no basis for considering whether the alleged facts might state a claim under Maryland law.  Moreover, in now challenging this assumption, the Government cites no Maryland law.  We think it appropriate, at least in the first instance, to allow the District Court to pass upon whether the complaint states a cause of action under Maryland law.

[7] The Government's responsibility for an assault may be clear even though the identity of the assailant is unknown.  For example, the Court of Appeals for the Seventh Circuit concluded in *Doe* v. *United States*, 838 F. 2d 220 (1988), that an action could be maintained under the FTCA even though discovery failed to reveal whether or not the assailant was a Government employee.  The court described the factual setting of the case as follows:

"Plaintiffs in these consolidated cases are two minor children and their parents.  During the fall of 1984, the children were sexually molested by *unknown* parties while in the care of the Scott Air Force Base Day Care Center.  It is not clear from the incomplete record on appeal whether the incidents occurred at the day care center or the children were removed from the premises during the day, assaulted, then returned.

". . . The complaint alleged, in essence, that the government assumed a duty to care for the children and that it breached that duty, allowing the *unidentified* attacker to molest the youths.  Child molestation is, of course, a form of assault and battery." *Id.*, at 221 (emphasis supplied).

The Court of Appeals was certainly correct in holding that it would be irrational to bar recovery if the assailant happened to be a Government employee, while permitting relief if he was not.  Moreover, as the Court of Appeals also correctly noted, courts should strive to avoid attributing absurd designs to Congress, particularly when the language of the statute

In a case of this kind,[*] the fact that Carr's behavior is characterized as an intentional assault rather than a negligent act is also quite irrelevant. If the Government has a duty to prevent a foreseeably dangerous individual from wandering about unattended, it would be odd to assume that Congress intended a breach of that duty to give rise to liability when the dangerous human instrument was merely negligent but not when he or she was malicious. In fact, the human characteristics of the dangerous instrument are also beside the point. For the theory of liability in this case is analogous to cases in which a person assumes control of a vicious animal, or perhaps an explosive device. Cf. *Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99 (1928). Because neither Carr's employment status nor his state of mind has any bearing on the basis for petitioners' claim for money damages, the intentional tort exception to the FTCA is not applicable in this case.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE WHITE, concurring.

In *United States* v. *Shearer*, 473 U. S. 52 (1985), four Justices, including myself, were of the view that 28 U. S. C. § 2680(h) barred recovery for damage caused from an assault by a Government employee said to be the result of a negligent act by another employee. But we did not address whether the assaulter was acting within the scope of his employment or whether that factor made a difference in apply-

---

and its legislative history provide little support for the proffered, counterintuitive reading.

[*]Because Carr's employment status is irrelevant to the outcome, it is not appropriate in this case to consider whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the FTCA for a foreseeable assault or battery by a Government employee.

ing the § 2680(h) exclusion.   In any event, to the extent the views I shared there are inconsistent with my present understanding, I think the Court's opinion, which I join, has the better of it.

JUSTICE KENNEDY, concurring in the judgment.

The question before us is how to interpret the intentional tort exception in the Federal Tort Claims Act, 28 U. S. C. §§ 1346(b) and 2671–2680, when a plaintiff's injury is caused both by an intentional tort and by negligence that precedes it.   The intentional tort exception, 28 U. S. C. § 2680(h), provides, in pertinent part, that the United States shall not be liable for "[a]ny claim arising out of assault, battery . . . ." Both the majority and the dissent provide persuasive reasons for their conclusions.   I write separately to set forth the bases for my differences with those opinions, and for my conclusion that the Court correctly decides that the judgment of the Court of Appeals must be reversed.

I

In an adaptation of Judge Harlan's analysis in *Panella* v. *United States*, 216 F. 2d 622 (CA2 1954), the Court asks whether the tortfeasor's actions occurred "while acting within the scope of his office or employment." *Ante*, at 400. Since "[t]he tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability whether that conduct is intentional or merely negligent," the Court concludes that the intentional tort exception is inapplicable to this case.   *Ante*, at 401–403.   In my view, this analysis is misdirected.   Petitioners' claim here is that the Government acted negligently, quite apart from the intentional tort of its employee.   The issue then is how to give effect to the Act's express authorization of suits grounded in negligence without eviscerating the Act's prohibition of claims "arising out of" intentional torts.   Whether or not the intentional tortfeasor

was on duty will not necessarily resolve this question. The proper inquiry must depend on an analysis of the Government's acts or omissions and of the theory on which the Government's negligence is predicated.

The Court seems to recognize as much when it states that it would allow a claim against the Government if based on negligence "of other Government employees . . . entirely independent of [the intentional tortfeasor's] employment status." *Ante*, at 401. The Court, however, fails to clarify the meaning of "independent" negligence or to explain how the legal significance of antecedent negligence somehow changes with the employment status of the intentional tortfeasor. Although its opinion asserts that it avoids the question whether a negligent supervision claim may be pressed against the Government in such a case, *ante*, at 403, n. 8, that issue is unavoidable, both as an analytic matter and on the facts of this case. As I explain more fully below, our inquiry should address whether a finding of liability for negligent supervision would undermine substantially the intentional tort exception.

The dissenting opinion is correct to focus on the statutory language, but I submit, with all respect, that it reaches the wrong result. The dissent's fundamental premise seems to be that any injury in which an intentional act is a substantial cause necessarily arises only from that intentional act. This contradicts the basic rule that the same injury can arise from more than one wrongful act:

> "Where voluntary acts of responsible human beings intervene between defendant's conduct and plaintiff's injury, the problem of foreseeability is the same and courts generally are guided by the same test. If the likelihood of the intervening act was one of the hazards that made defendant's conduct negligent—that is, if it was sufficiently foreseeable to have this effect—then defendant will generally be liable for the consequences . . . . So far as scope of duty . . . is concerned, it should make no difference whether the intervening actor is negligent or in-

tentional or criminal." 2 F. Harper & F. James, Law of Torts § 20.5, pp. 1143–1145 (1956) (footnotes omitted).

See also Restatement (Second) of Torts §§ 447–449 (1965). The dissent's approach implies the converse: that an intentional act somehow obliterates the legal significance of any negligence that precedes or follows it. It must be noted that the phrase "arising out of" refers to claims, not suits. Congress did not bar any *suit* arising out of intentional torts; it barred only *claims* arising out of such wrongs. 28 U. S. C. § 2680(h) ("Any *claim* arising out of assault, battery . . .") (emphasis added). Whatever uncertainty surrounds the intentional tort exception, it is unlikely that Congress intended it, as the dissent suggests, to bar suits for "all injuries associated in any way with an assault or battery." *Post*, at 409. It is standard tort doctrine that a reasonably foreseeable injury can arise from multiple causes, each arising from a breach of a different duty and each imposing liability accordingly. The dissent's position violates this basic principle by stating: "If we were to construe the words according to their ordinary meaning, we would say that a claim 'arises out of' a battery in any case in which the battery is essential to the claim." *Post*, at 408.

## II

I am in substantial agreement with the opinion of Chief Judge Winter, who wrote the dissenting opinion when this case was before the Court of Appeals. To determine whether a claim arises from an intentional assault or battery and is therefore barred by the exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tortfeasor or the breach of some separate duty independent from the employment relation. See 823 F. 2d 820, 824, 828 (CA4 1987). If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h)

bars the claim. Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors. To allow such claims would frustrate the purposes of the exception.

The Court is wrong to imply that this issue is somehow removed from the facts of this case. It is squarely implicated here, and the trial court should be advised how to deal with it, not left to wonder. It is quite plausible to argue that Carr was missupervised by Government officers who had authority over him and had, we may assume, the duty to control his unauthorized behavior and enforce the Government regulations restricting the possession of firearms on the naval base. Absent the exception set forth in § 2680(h), the Government could be held negligent for failing to supervise Carr in a way such that the rifle would be discovered. We should state explicitly that this is not a theory that petitioners are free to pursue on remand.

An alternative theory of liability, however, is the Government's negligent performance of its Good Samaritan duty under the state law of Maryland, which I assume, as the Court does, provides for such liability if Carr had been a private person. *Ante*, at 401–403. On this theory, the Government's negligence is independent of its employment relation with Carr. The Government's duty to control the behavior of individuals on the naval base extended to all individuals, employee and nonemployee alike. This theory of liability does not depend on the employment status of the intentional tortfeasor. When the Government would be liable even if the tortfeasor had been a private person, say an individual who wandered onto the naval base, there is little danger that § 2680(h) will be circumvented. The intentional tort exception does not preclude recovery under a theory of independent governmental negligence, despite the presence of a (barred) negligent supervision claim. Cf. *Block* v. *Neal*, 460

U. S. 289, 297–298 (1983) ("[T]he partial overlap between these two tort actions [of negligent misrepresentation and of negligent supervision regarding the construction of plaintiff's home] does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well").

In sum, I would hold that where the plaintiff's tort claim is based on the mere fact of Government employment, a *respondeat superior* claim, or, a short step further, on the conduct of the employment relation between the intentional tortfeasor and the Government without more, a negligent supervision or negligent hiring claim, § 2680(h)'s exception applies and the United States is immune.   See also *post*, at 411.   I concur in the Court's judgment insofar as it finds that § 2680(h) does not bar tort claims based on the independent negligence of the Government.   For these reasons, I agree that the judgment of the Court of Appeals must be reversed.

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

Petitioners seek to recover money damages under a section of the Federal Tort Claims Act (FTCA) that authorizes claims against the Government for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."   28 U. S. C. § 1346(b).   That section is subject to an exception for any claim "arising out of" an assault or battery.   28 U. S. C. § 2680(h).   Despite the unqualified language of this exception, the Court today holds that it does not protect the Government from liability for a battery committed by a Government employee who acted outside the scope of his employment, if other Government employees had a duty to prevent the battery.

If we were to construe the words according to their ordinary meaning, we would say that a claim "arises out of" a battery in any case in which the battery is essential to the claim.   Thus when the Court construed another exception to

the FTCA for claims "arising in respect of . . . the detention of any goods" by customs or law enforcement officials, 28 U. S. C. §2680(c), we equated "arising in respect of" with "arising out of" and decided that the phrase includes "all injuries associated in any way with the 'detention' of goods." See *Kosak* v. *United States,* 465 U. S. 848, 854 (1984). A parallel construction of the exception at issue here leads to the conclusion that it encompasses all injuries associated in any way with an assault or battery. Indeed, four Justices described the exception essentially in this way in *United States* v. *Shearer,* 473 U. S. 52 (1985). That case involved a claim against the Army for negligent supervision of a serviceman who kidnaped and murdered another serviceman. The plurality explained, in terms equally applicable here, why it thought the claim was barred.

> "Respondent cannot avoid the reach of §2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. Thus 'the express words of the statute' bar respondent's claim against the Government. *United States* v. *Spelar,* 338 U. S. 217, 219 (1949)." *Id.,* at 55 (emphasis in original).

The Court acknowledges that the exception for claims arising out of assault or battery is phrased in broad terms. *Ante,* at 398. The Court believes, however, that we recognized implicit limitations on that exception in *United States* v. *Muniz,* 374 U. S. 150 (1963). One of the cases consolidated for decision in *Muniz* was brought by a prisoner who alleged that negligent Government employees failed to prevent other inmates from assaulting and beating him. The Court rejected the Government's argument that Congress

did not intend to allow prisoners to bring claims under the FTCA. *Id.*, at 158. The majority infers from this decision that the Government can be liable under the FTCA when Government employees fail to prevent nonemployees from committing assault or battery. *Ante*, at 398–399. But that inference is unnecessary, because the Court in *Muniz* expressly reserved judgment on whether one of the exceptions of § 2680 barred the prisoner's claim. 374 U. S., at 163.

The Court's decision in this case extends its erroneous interpretation of *Muniz*. The Court develops a theory to explain why the assault and battery exception does not bar a claim based on the negligent failure of Government employees to prevent a battery by a nonemployee, and shows why that theory applies with equal force to a battery by a Government employee like Carr who was not acting within the scope of his employment. *Ante*, at 400. Because I reject the interpretation of *Muniz* on which the majority's argument is premised, I reject this extension as well.

There is no support in the legislative history for the limitation of the assault and battery exception that the Court adopts today. When Congress enacted the exception, it was concerned with a particular factual situation. See *Shearer*, *supra*, at 55. Mr. Holtzoff, a Special Assistant to the Attorney General, told the Senate in general terms that the torts of assault and battery were excluded from the FTCA. Tort Claims Against the United States: Hearings on S. 2690 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 3d Sess., 39 (1940). At the House hearings, Mr. Holtzoff explained that "[t]he theory of these exemptions is that, since this bill is a radical innovation, perhaps we had better take it step by step and exempt certain torts and certain actions which might give rise to tort claims that would be difficult to defend, or in respect to which it would be unjust to make the Government liable." Tort Claims Against the United States: Hearings on H. R. 7236 before Subcommittee No. 1 of the House Committee on the

Judiciary, 76th Cong., 3d Sess., 22 (1940). Interpreting this remark, the Government suggests that Congress reasonably might have concluded that it would be unjust to make the Government liable for claims arising out of an assault or battery merely because Government employees other than the tortfeasor were negligent, since the individual tortfeasor plainly is the more culpable party. Indeed, intentional torts sometimes are found to be superseding causes that relieve a negligent party of liability. Restatement (Second) of Torts § 448 (1965). This analysis applies whether the person committing the intentional tort is a Government employee, a nonemployee, or a Government employee acting outside the scope of his office.

The Court stops short of adopting petitioners' most ambitious argument, according to which the Government can be liable for negligently supervising a Government employee who commits an assault or battery while acting within the scope of his employment. *Ante*, at 403, n. 8. I trust that the courts will preserve at least this core of the assault and battery exception. I dissent from the Court's decision to confine the exception to such a narrow scope.