**James B. CAMPBELL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.00–11942–NMG.**

United States District Court, D. Massachusetts.

Jan. 20, 2004.

Edmund M. Pitts, Pitts & Pitts, Lynn, MA, for Plaintiff.

Anita Johnson, U.S. Attorneys Office, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff, James B. Campbell ("Campbell"), sues the United States of America under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for negligent supervision of a seaman in the United States Navy. Pending before the Court is the defendant's renewed motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1).

## I. *Background*

On September 22, 1997, Campbell, a 58–year old licensed engineering officer in the United States Merchant Marine, was employed as a primary contractor engaged in the renovation of the SS Noboska. The SS Noboska is an historic ferry vessel, which at that time, was docked in the Charlestown Navy Yard, several hundred feet from the USS Constitution.

According to Campbell, as he walked along the dock on his way to work at approximately 7:00 A.M., he was nearly struck by a vehicle recklessly driven by a Seaman Oliver of the USS Constitution. Although he was not injured, Campbell approached the USS Constitution to lodge a complaint against Seaman Oliver. As Campbell approached the ship, he shouted indelicately at various Navy personnel that he wanted Seaman Oliver put on report. In response, crew members on the quarterdeck of the USS Constitution "jeered" at him.

One of those crew members, Seaman John Hernandez, Jr. ("Hernandez"), came down from the deck of the ship and entered the guard shack, a small ten-foot-square building located approximately 25 feet from the foot of the gangway of the USS Constitution. After entering the guard shack, Hernandez picked up a hammer, hid it behind his right leg and approached Campbell, who was approximately 15 feet away from the gangway of the ship. Using the hammer, Hernandez struck Campbell on the forehead, above his right eye, rendering Campbell unconscious and causing further injuries to Campbell as he fell to the ground on his back.

As a result of that incident, on September 21, 2000, Campbell filed a complaint in this Court against the United States of America under the FTCA, alleging that various naval personnel were negligent in allowing Hernandez to obtain the hammer and in failing to prevent the ensuing assault and battery. Further, the complaint alleges that various supervisory personnel on the USS Constitution negligently failed to assign responsible naval officers to control the actions of members of the crew.

On February 15, 2001, the government filed a motion to dismiss the case for lack of subject matter jurisdiction contending, for various reasons, that the FTCA does not apply to this case. On September 28, 2001, the Court denied the government's motion to dismiss holding that: 1) the supervisory personnel of the USS Constitution were acting within the scope of their employment when they allegedly failed to prevent the assault and battery and failed to assign responsible personnel to supervise the crew of the ship, 2) the assault and battery exception to the FTCA is not applicable in this case and 3) without further discovery, which the Court authorized plaintiff to take, it would be inappropriate to dismiss the plaintiff's negligence claims on the grounds of the discretionary function doctrine.

After substantial discovery which was delayed by contentious discovery disputes, the United States filed, on December 5, 2003, its second motion to dismiss the complaint for lack of subject matter jurisdiction. The motion asserts that this claim is barred by the assault and battery exception of the FTCA due to lack of 1) a "special relationship" between the plaintiff and the government and 2) the foreseeability of the conduct of Seaman Hernandez. The government also asserts that the additional, hard-fought discovery has yielded no evidence that would override the discretionary function exception of the FTCA. The plaintiff filed his opposition to the renewed motion to dismiss on January 6, 2004 and the Court heard oral argument on it on January 15, 2004.

## II. *Discussion*

In considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the Court assumes that all material allegations set forth in the complaint are true. *See Mulloy v. United States,* 884 F.Supp. 622, 626 (D.Mass. 1995); *Williams v. City of Boston,* 784 F.2d 430, 433 (1st Cir.1986). The averments of the complaint, as well as their proper inferences, are construed in favor of the plaintiff and the claim will not be dismissed unless "it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Williams,* 784 F.2d at 433; *Mulloy,* 884 F.Supp. at 626.

### 1. *The Assault and Battery Exception, 28 U.S.C. § 2680(h)*

The government argues that the Court lacks subject matter jurisdiction to hear this case because it falls under the "assault and battery" exception to the FTCA. The United States is immune from suit unless it specifically agrees to be sued. *Hercules v. United States,* 516 U.S. 417, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). The FTCA contains a broad waiver of immunity of the United States from suit in tort, 28 U.S.C. § 1346(b), but that waiver contains certain limitations, one of which is that the FTCA shall not apply to any "claim arising out of an assault, [or] battery...". 28 U.S.C. § 2680(h). If Campbell's claim arises under § 2680(h), the Court does not have subject matter jurisdiction to hear it. The relevant question is, therefore, whether the plaintiff's claim arises from assault and battery or the alleged negligent supervision by Navy personnel which created an independent duty on the part of the Navy to protect Campbell.

In *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), an off-duty U.S. Army Private was kidnapped and murdered by another serviceman, who had previously been convicted and imprisoned for manslaughter. The Private's estate sued the Government on a theory of negligent supervision and the United States Supreme Court held that § 2680(h) barred the claim. Justice Burger, writing for a plurality, held that the death arose from an assault and that § 2680(h) "cover[s] claims ... that sound in negligence but stem from a battery caused by a government employee." *Id.* at 55, 105 S.Ct. 3039. *Shearer* established the proposition that any case arising from an assault or battery by a government official is barred from consideration by federal courts.

In *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), however, the Court allowed a FTCA claim which alleged that the government was negligent in failing to prevent one serviceman from shooting another. In that case, a Navy corpsman found an extremely drunk serviceman, Carr, who threatened him with a rifle. The corpsman fled and took no further action to subdue or report Carr, who later shot and injured the plaintiff. The Court held that while the intentional tortious conduct of a government employee does not give rise to government liability, the government may be liable if the negligent breach of a duty "entirely independent of [the employee-tortfeasors]'s employment status" allows an employee to commit a foreseeable assault or battery. *Id.* at 401, 108 S.Ct. 2449. *Sheridan* did not overrule or, in fact, even cite *Shearer.*

After *Sheridan,* courts have read the language of *Shearer* more narrowly, often refusing to bar claims when negligent supervision, hiring or failure to protect permitted a government employee to commit an assault. *Miami North, Inc. v. United States Department of Labor Penobscot Job Center,* 939 F.Supp. 53, 55 (D.Me.1996).

Claims of negligent government supervision causing an assault or battery are sustainable when there is some duty or "special relationship" owed to the victim and when the assault or battery was foreseeable. *Bruni II v. United States,* 1991 WL 128580 (D.Mass.1991).

A "special relationship" has been found to exist when the government voluntarily undertakes to safeguard the victim in some way. For example, in *Mulloy v. United States,* 884 F.Supp. 622 (D.Mass.1995), an Army private, Dwan Gates, kidnapped, raped and murdered the wife of an Army captain who lived on an Army base in Germany. It was discovered after the murder that Gates had an extensive criminal record, including a conviction for rape, which should have prevented his enlistment in the Army had proper investigative protocol been followed. The court held that, because of her residence on the Army base and connection with the military, the victim had a special relationship with the government which created a duty to protect her against foreseeable third party crimes. *Id.* at 632. Other examples of "special relationships" include school children on a navy base, *Harris v. United States,* 797 F.Supp. 91, 94–95 (D.P.R.1992), an in-patient at a hospital, *Bembenista v. United States,* 866 F.2d 493 (D.C.Cir.1989) and a female choral group member assaulted by her government-provided, West Point escort, *Loritts v. United States,* 489 F.Supp. 1030, 1032 (D.Mass.1980).

On the other hand, in cases where a court finds no "special relationship" between the plaintiff and the government, the claim of negligence cannot stand under § 2680(h). To allow such a claim would reduce the statute to a meaningless pleading rule and would contradict the purpose of the FTCA. For example, the government was not liable for negligence in a case in which Job Corps employees committed an assault at a local arcade because there was no special relationship between the victims and the Job Corps program. *Miami North,* 939 F.Supp. at 56. *See also, Bruni II,* 1991 WL 128580 at *4.

■ In the instant case, there was no special or protective relationship between Campbell and the Navy or Hernandez's supervisors. Campbell was not employed by or affiliated with the USS Constitution. The government had no obligation to protect him merely because he walked by the ship. Nor was there a special relationship created by Campbell's employment on the SS Noboska, which was docked on National Park Service property. Not only was Campbell an independent contractor but the Foundation that owns the Noboska had entered into a hold harmless agreement with the National Park Service. In short, the government owed Campbell no independent duty of protection. The motion to dismiss for lack of subject matter jurisdiction will, therefore, be allowed.

While the lack of a special relationship is dispositive of the pending motion, the Court notes that even if such a relationship existed, the plaintiff would be confronted with a second, insurmountable hurdle associated with the "arising from assault and battery" exception to the FTCA. Campbell must show not only that the government had an independent duty to prevent the assault, but also that the particular assault was foreseeable.

Campbell contends that the entire incident took place over a period of 12 minutes, during which time Hernandez entered a guard shack and grabbed the hammer that he later used to strike Campbell. He argues that the petty officers in charge should have been aware that an assault was about to happen. He concedes, however, that no more than one minute transpired between the time Hernandez left the ship and he assaulted

Campbell. Given the short interval and the absence of evidence that Hernandez had anything other than a spotless record, it is unreasonable to believe that the plaintiff could demonstrate the requisite foreseeability.

### 2. *The Discretionary Function Exception, 28 U.S.C. § 2680(a)*

■ Finally, the government asserts that the Court is divested of subject matter jurisdiction here by virtue of the so-called "discretionary function" exception to the FTCA, 28 U.S.C. § 2680(a). The First Circuit Court of Appeals has held that such an exception applies:

> to any claim... based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Magee v. United States,* 121 F.3d 1, 4 (1st Cir.1997).

■ In order to determine whether a claim is subject to the discretionary function exception, the court must determine: 1) whether the conduct in question was discretionary in nature, *Magee* at 4, and, if so, 2) whether it was the kind of conduct the discretionary function was designed to shield. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The exception relates only to those "governmental actions and decisions based on considerations of public policy" and conduct is not discretionary if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. *Id.*

In the instant case, the government argues that Campbell's improper staffing argument addresses a discretionary function of the Navy and argues that judicial reluctance to intervene in agency operations is and should be pronounced when the military is involved. It argues that judicial intervention into decisions regarding supervision and management of staff is particularly egregious in matters of security, and that this case involves such a matter. The plaintiff responds that there were particular National Park Service and Navy rules and regulations that dictated procedures to be followed when altercations were suspected and that such regulations were disregarded.

If there were any such regulations, the subject conduct may not have been controlled by the discretionary function exception. The plaintiff has not, however, cited, either in his papers filed with this Court or at the January 15, 2003 hearing on the motion to dismiss, any specific regulation on this or any other subject sufficient to evade the discretionary function exception. As such, this Court could not reasonably sustain plaintiff's position at trial.

### ORDER

For the reasons stated in the foregoing memorandum, the defendant's Motion to Dismiss (Docket No. 48) is ALLOWED.

**So ordered.**