**VIRGINIA L. GIBBONS, Plaintiff,**

v.

**AMERICAN SAMOA GOVERNMENT,**
**and DOES 1 through 10, inclusive, Defendants.**

High Court of American Samoa
Trial Division

CA No. 128-93

November 2, 2005

---

[8] *Cf.* A.S.C.A. § 46.0917. The question of bail or the appropriateness of bail was not raised here.

Before KRUSE, Chief Justice; ATIULAGI, Associate Judge; and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
For Defendants, David Cassetty, Assistant Attorney General

## ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

### Introduction

On February 16, 1992, Maosi Fualu`au ("Maosi"), a prisoner then serving a 7 year rape sentence at the Tafuna Correctional Facility ("TFC"), essentially walked out of the prison gates, crossed the street, broke into a house, and beat and raped plaintiff Virginia Gibbons ("Gibbons"). In April 1999, after the liability phase of a bifurcated trial, the Court found the defendant American Samoa Government ("ASG") liable for negligently maintaining the prison, thus facilitating Maosi's escape. During the subsequent damages phase, we apportioned Gibbons' overall damages, attributing 1/3 to the ASG's negligence and 2/3 to Maosi's intentional acts.

In September 2001, ASG moved for reconsideration, or in the alternative, a new trial. That motion was denied. In December of that year, Gibbons appealed the damages award and the Appellate Court affirmed in October 2002.[1] ASG has yet to satisfy any of the judgment.

Now, over thirteen years since the rape and three years since the Appellate Division decided Gibbon's appeal, ASG now moves for relief from judgment arguing that the Trial Court lacked subject matter jurisdiction over the action.[2]

---

[1] *Gibbons v. American Samoa Gov't.*, 6 A.S.R.3d 50 (App. Div. 2002.)

[2] It should be noted here that throughout the many years this case has been litigated—through seven years of discovery, a bifurcated trial, a motion for reconsideration and an appeal—ASG never once raised the current argument. However, since subject matter jurisdiction is always ripe (*see Collins v. Foreman*, 729 F.2d 108, 111 (2nd Cir. 1984) (lack of subject matter jurisdiction could render a judgment void, thus the issue is subject to

ASG's argument has a few layers, but essentially breaks down as follows: with the enactment of the Government Tort Liability Act, A.S.C.A §§43.1202 et. seq., ("GTLA" or "Act") in 1967, ASG waived sovereign immunity for claims arising out of its employee's negligence, but did not, however, waive immunity for claims arising out of intentional torts (e.g., assault or battery). Here, ASG argues that Gibbons's damages arise solely from Maosi's assault, an intentional act. Because the injuries stem from an assault, ASG contends that this Court lacked subject matter jurisdiction to entertain the case. As such, ASG argues the 1999 judgment is void and must be set aside under Rule 60(b)(4).[3]

The scope of the GTLA's intentional tort exception, appears to be an issue of first impression. The Act was modeled almost entirely on the Federal Tort Claims Act ("FTCA") (28 U.S.C. §§1346(b) and 2671 *et seq.*) Moreover, the two sections in play here—A.S.C.A. § 43.1209's general immunity waiver and grant of jurisdiction, and A.S.C.A. §43.1203(b)(5)'s intentional tort exception—were copied almost verbatim from the FTCA. *Bryant v. Southwest Marine of Samoa, Inc.*, 22 A.S.R.2d . 88 (1992). Accordingly, we look to federal courts interpreting these parallel statutory provisions for guidance.

## Discussion

■ The GTLA gives the High Court exclusive jurisdiction over civil claims against ASG for money damages caused by the "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." A.S.C.A. §43.1209(a);[4] *Tauiliili v.*

---

collateral attack under Fed. R. Civ. Proc. 60(b)(4)), we consider ASG's motion.

[3] T.C.R.C.P. 60(b)(4) allows the trial court to grant relief from void judgments. Defendant argues, and the Court agrees, that *if* subject matter jurisdiction was lacking, then the 2001 judgment would be void, and the Court would be compelled to set it aside pursuant to Rule 60(b)(4). *See e.g., Collins v. Foreman*, 729 F.2d 108 (2nd Cir. 1984). However, as discussed below, since the Court properly had subject matter jurisdiction, the judgment stands.

[4] In its entirety, § 43.1209 reads:

Jurisdiction over actions.

(a) The Trial Division of the High Court shall have exclusive jurisdiction of civil actions on claims against the government accruing on or after the effective date of this chapter, for money damages, for damage to or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his

309

*American Samoa Gov't*, 13 A.S.R.2d 61 (1989). However, among other enumerated exceptions, the Act also provides that the Court lacks jurisdiction over any claims against ASG "arising out of assault, battery" or other intentional torts. A.S.C.A. § 43.1203(b) (5).[5] Generally speaking, these sections, when read together, say that ASG waives immunity for an employee's negligent acts, but retains immunity for intentional acts.

ASG urges that we focus on the words "negligent" and "intentional," and argues that jurisdiction is lacking because the GTLA expressly says that ASG did not waive immunity for claims "arising out of" assaults. Taking the argument to its logical end, ASG contends that the judgment against them is void because all of Gibbons' damages "arose out" of Maosi's intentional acts. In short, ASG does not contest that its employees were in fact negligent in maintaining the TCF and in facilitating Maosi's escape; instead they argue that under the statute's express terms, they are absolved from that negligence because Maosi committed an intentional tort rather than a negligent tort after his escape.

We disagree. In reading these two sections together, we conclude that the proper focus here is not, as ASG maintains, on the words "negligent" or "intentional." Rather, focus is to be placed on the word "employee."

---

office or employment, under circumstances where the government, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[5] Section 43.1203 governs both the scope of the ASG's liability and the exceptions to liability. It provides:

(a) The government is liable, except as otherwise provided in this chapter, in the same manner and to the same extent as a private individual under like circumstances, but is not liable for interest prior to judgment or for punitive damages, except that in a case wherein death is caused and the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the government is liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively for whose benefit the action was brought.

(b) The provisions of this chapter do not apply to:

(5) any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights.

The U.S. Supreme Court confronted a similar issue *Sheridan v. United States*, 487 U.S. 392 (1988). There, Carr, an intoxicated off-duty serviceman (a government employee) fired several shots from a rifle into the plaintiffs' car, injuring one of the occupants. *Id.* at 394-95. The assault occurred on a public street near the Bethesda Naval Hospital where Carr worked. *Id.* Prior to the assaults, three naval corpsmen (also government employees) happened upon Carr laying facedown in a drunken stupor and attempted to take him to the emergency room. *Id.* at 395. However, when Carr became belligerent and brandished his rifle, the corpsmen fled. *Id.* The corpsmen took no other action; specifically, they did not alert hospital authorities that an armed, intoxicated person was on the premises. *Id.*

The plaintiffs sued the Government under the FTCA, alleging that their injuries resulted not from Carr's assault, but from the corpsmen's negligence in letting Carr leave the hospital with the rifle.[6] *Id.* The district court concluded that as a general rule, the Government was not liable for its employee's intentional torts. *Id.* While it was "sympathetic" to the plaintiffs' arguments, the court concluded that the plaintiffs' damages ultimately "arose out of" Carr's intentional acts. Thus, finding the FTCA's intentional tort exception applicable,[7] the district court dismissed the action for want of subject matter jurisdiction. The Fourth Circuit affirmed. *Id.*

The Supreme Court granted certiorari and reversed. *Id.* at 403. While the Court initially observed that the FTCA's intentional tort exception is "unquestionably broad enough to bar all claims based entirely on an assault and battery," they nevertheless held that in "some situations[,] the fact that an injury was directly caused by an assault or battery *will not preclude* liability against the [federal g]overnment for negligently allowing the

---

[6] Like A.S.C.A. § 43.1209's general immunity waiver and grant of jurisdiction, 28 U.S.C. § 1346(b)(1) provides that U.S. district courts:
> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[7] 28 U.S.C. § 2680(h), the FTCA's intentional tort exception, provides that 28 U.S.C. § 1346(b)(1) shall not apply to:
> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .

assault to occur." *Id.* at 398-99 (emphasis added).

The Court's analysis was simple and elegant. Adopting then Judge Harlan's reasoning in *Panella v. United States*, 216 F.2d. 622 (2d Cir. 1954), the Court held that the intentional tort exception must be read against the rest of the FTCA. *Id.* at 400. The Court explained that the FTCA contemplates personal injury actions "caused by the wrongful act or omission of *any employee of the Government* while acting within the scope of his . . . employment." *Id.* (emphasis in original). Two phrases in the FTCA were critical to the Court's analysis: "employee of the government," and "acting within scope of his . . . employment." *Id.* The Court concluded that since the FTCA only waives immunity for negligent acts committed by employees during the course of their employment, the intentional tort exception only applies to intentional torts committed by employees during the course of their employment. *Id.* (holding that "the exception *only* applies in cases arising out of assaults by federal employees" committed in the course of their employment.) Thus, even though the federal government employed Carr, he was not acting in the course of that employment at the time of the assault. Therefore, neither the Act (waiving immunity for its employees negligent acts), nor the exception (retaining immunity for employees intentional acts), applied to Carr's conduct. *Id.* at 401.

Having concluded that the intentional tort exception had no bearing on the suit, the Court went on to address whether the Corpsmen's negligence, in allowing a foreseeable assault to occur, could provide basis for a suit against the United States Government under the FTCA. The Court concluded it could. *Id.* at 401-02. First, the Court held that naval regulations prohibited possessing firearms on the base and further required that personnel report the presence of firearms. *Id.* at 401. The reporting requirement created a duty on behalf of the corpsmen to alert others about Carr. Second, the Court held that in voluntarily attempting to help visibly drunk and obviously armed Carr, the corpsmen assumed a duty to carry out their "good Samaritan" task carefully. *Id.* Failing to report Carr to the proper authorities was a breach of both of these duties. *Id.* This breach exposed the Government to liability under the Act; thus subject matter jurisdiction was proper. *Id.* at 403.

Accordingly, whether Carr's conduct was ultimately characterized as negligent or intentional was irrelevant to the calculus. On this point, the Court reasoned that "if the Government has a duty to prevent a foreseeably dangerous individual from wandering about unattended, it would be odd to assume that Congress intended a breach of the duty to give rise to liability when the [individual] was merely negligent, but not when he or she was malicious." *Id.* at 403.

■ We find *Sheridan's* reasoning compelling. Since Maosi was not an ASG employee, §43.1203(b)(5)'s intentional tort exception is inapplicable to Maosi's actions. Thus whether he acted intentionally or negligently at the time of the assault is totally irrelevant. Here, like in *Sheridan*, the government's liability is predicated on the negligence of *its employees* prior to a third party's intentional act. To hold, as ASG urges here, that Maosi's intentional acts somehow absolves it of its antecedent negligence is specious in light of the GTLA's purpose. Moreover, such an argument, if accepted, would also completely gut the accepted tort principle that the same injury can arise from *more than one* wrongful act. *See e.g.*, RESTATEMENT (SECOND) OF TORTS § 448 (1965) (stating that a third party's intentional or criminal act is *not* a superseding cause of an actor's prior negligence if, at the time of the negligence, that actor should have realized the third party would take advantage of the negligence and avail himself of the opportunity to commit a crime.)

■ Having concluded that the intentional tort exception has no bearing on the case before us, we turn to the broader question of whether the Court properly had subject matter jurisdiction based on ASG's negligence. If ASG employees had a duty to prevent prison escapes, and if those employees negligently carried out that duty, then suit under the GTLA is proper and this Court has subject matter jurisdiction regardless of whether Gibbons' damages were ultimately caused by an intentional act.
Without getting into a lengthy rehash of the Trial Court's findings, it is clear here that ASG employees had a legal duty to "protect fellow inmates and members of the general public from those it has taken within its custody." *Rakhsahn v. Tuilefano*, 18 A.S.R.2d 46, 48 (Trial Div. 1991). Assumed in this general statement is the duty to prevent escapes, thus mitigating the opportunity for criminals to perpetuate further crimes against the public.

Having established a duty, the Trial Court's findings of fact more than support the conclusion that ASG employees breached that duty. Evidence presented below indicates that prison officials failed to cover huge holes in the prison's walls, left perimeter gates unsecured, allowed prisoners access to alcohol while incarcerated, and generally failed to provide reasonable security measures. Indeed, at trial the prison's own warden referred to the facility's overall security program as "a joke." *Gibbons v. American Samoa Gov't.*, 3 A.S.R.3d 135, 140 (Trial Div. 1999). Clearly, ASG's failure to properly secure the prison was a breach of their duty to protect the public from dangerous criminals.

313

## Order

Like the corpsmen's negligence in *Sheridan*, the negligence of ASG employees precipitated and facilitated Maosi's assault on Gibbons. This antecedent negligence opens the door to suit under the GTLA, regardless of whether damages were ultimately caused by a negligent or intentional act. Further, because Maosi was not a government employee at the time of the assault, the intentional tort exception is irrelevant and inapplicable in this case.

Because liability turned on ASG's negligent conduct, the Trial Court properly had subject matter jurisdiction pursuant to A.S.C.A. § 43.1209. Therefore, ASG's motion to set aside the judgment is denied.

It is so ordered.

## RIDER

The court is very concerned with ASG's failure to timely address satisfaction of the outstanding judgment awarded Gibbons in this matter. As we noted above, it has been thirteen years since the events leading up to plaintiff's injury and damages, and three years since the Appellate Division affirmed Gibbon's judgment award, secured after seven arduous years of litigation. ASG's continuing omission to pay the judgment is inexplicable. It is also a sad commentary on the *rule of law* in this territory of the United States, since this is not an isolated instance. *See e.g. Utu v. American Samoa Gov't*, CA No. 83-90 (Trial Div. 1992) (Gov't's Memorandum of Law in Support of Motion For Reconsideration at page 2). This dilatory reaction to unequivocal statutory directives, regarding satisfaction of judgments against the government, is as far as we can tell peculiar to the American Samoa Government. Such official apathy only adds to the sort of perception that has, in recent times, attracted increasing off-island federal attention to the territory. Ignoring a final judgment against ASG does not make it go away, while interest thereon continues to accrue unabated.