**UNITED STATES of America
ex rel. John DOE,**

v.

**X CORP.**

**Civ. A. No. 92–475–A.**

United States District Court
E.D. Virginia,
Alexandria Division.

Sept. 26, 1994.

Stephen W. Robinson, McGuire, Woods, Battle & Boothe, McLean, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I.

Can a corporate house counsel properly act as a relator in a *qui tam* action against his former employer?

This is the novel question presented in what is the third and final chapter in an unusual saga that has spawned three actions, including the instant *qui tam* action. The first two chapters of the saga arose in the context of the former employer's suit for injunctive relief to prevent the former house counsel employee from disclosing confidential documents and information obtained by the corporate house counsel during the course of his employment. In the first chapter, the Court granted partial preliminary relief, ruling that the former corporate house counsel could disclose to the government his former client's confidential documents and information only if a reasonable attorney in the circumstances would conclude that the disputed documents and information clearly established the employer-client's fraud. *X Corp. v. Doe*, 805 F.Supp. 1298 (E.D.Va. 1992), *aff'd, Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir.1994) ("*X Corp. I*"). In the second chapter, the Court applied the *X Corp. I* standard to the undisputed facts, including specific documents and information, and ruled that a reasonable attorney in the circumstances would not conclude that the disputed information and documents clearly established an ongoing fraud by the former employer. *X Corp v. Doe*, 816 F.Supp. 1086 (E.D.Va.1993) ("*X Corp. II*"). Accordingly, the Court ruled that the former employer-client was entitled to summary judgment and issued an injunction compelling the former corporate house counsel to return the disputed documents and enjoining him from voluntarily disclosing X Corp.'s confidential documents and information. *Id.* at 1097.

John M. Bredehoft, Charlson & Bredehoft, Reston, VA, for John Doe.

Theresa Carroll Buchanan, Asst. U.S. Atty., Alexandria, VA, for U.S.

This third chapter arises in the second of the three actions,[1] namely the *qui tam* action brought by the corporation house counsel as a relator against his former employer-client. As it happens, this *qui tam* action has now largely been concluded, as the government, which never elected to assume control of the action, and X Corp. have settled the underlying dispute. This would be the end of the entire matter were it not for X Corp.'s contention that Doe, the former house counsel, is ineligible to serve as a relator by virtue of his previous role as X Corp.'s house counsel. Furthermore, X Corp. maintains that the minimal extent of Doe's assistance in this case, an incidental result of the *X Corp. II* injunction, also precludes Doe from serving as a relator. On these grounds, X Corp. seeks summary judgment. Doe, for his part, contends he is a proper relator, that his status as house counsel and his limited contribution to this case do not disable him from acting as a relator, and that he is therefore entitled to a statutory share of the settlement proceeds, as well as reasonable attorney's fees. Resolution of these opposing contentions is the subject of this third and final chapter in the saga.

## II.[2]

X Corp., a major government supplier of computer equipment, hired John Doe in March 1989 as a member of its California-based in-house legal staff. In this capacity, Doe, a former government official,[3] dealt chiefly with matters related to X Corp.'s compliance with government regulations, eventually becoming the in-house attorney primarily responsible for these matters. In early 1990, in the course of his duties, Doe became concerned that X Corp. might be violating certain Federal Acquisition Regulations ("FAR") and contract provisions by supplying the government with used or remanufactured equipment rather than with the required "new, including recycled" equipment. Doe also became concerned that X Corp. might be violating certain FAR's by failing to report to the government certain price discounts provided to commercial customers on X Corp. equipment that was the same or essentially similar to X Corp. equipment supplied to the government.[4] Doe reported his concerns to his X Corp. supervisors and began a thorough investigation of X Corp.'s practices in performing government contracts during the 1989 and 1990 fiscal years. In November 1990, in the midst of this investigation, Doe was transferred to X Corp.'s Reston, Virginia office. Although primary control over the probe shifted to another California-based in-house attorney, Doe continued to monitor the investigation and X Corp.'s efforts at compliance from Reston. By late 1991, Doe had become dissatisfied with the pace of these compliance efforts and repeatedly communicated his discontent to other X Corp. employees, including members of the legal department. Doe's endeavors in this regard continued until February 28, 1992, when for reasons unrelated to this *qui tam* suit, X Corp. terminated Doe's employment with the company.[5] On departure, Doe took with him approximately 4,300 copies of X Corp. documents and files that he believed supported his allegations that X Corp. defrauded the government. And, to remedy what he believed to be fraudulent practices by his former employer, Doe insti-

---

1. The third of the three actions was a wrongful termination action brought by the corporate house counsel against X Corp. This action ended adversely to the attorney at both the district and circuit levels. *See Under Seal v. Under Seal*, 19 F.3d 1430 (4th Cir.1994).

2. Set forth here are only those facts material to the resolution of the relator issue. For a more extensive statement of facts, see this Court's previous decisions in related cases. *X Corp I*, 805 F.Supp. 1298; *X Corp. II*, 816 F.Supp. 1086.

3. Doe had previously served as Associate Deputy Attorney General of the United States, Chief of Staff to the Attorney General.

4. The details of Doe's concerns and allegations regarding fraud and regulatory violations by X Corp. are not material to a resolution of the issue at bar. For a more complete statement of Doe's concerns and allegations, see *X Corp I*, 805 F.Supp. at 1299–1301; *X Corp. II*, 816 F.Supp. at 1087–1090.

5. One issue involved in *X Corp II* was whether X Corp. fired Doe in retaliation for acts taken in furtherance of this *qui tam* action. The Court rejected Doe's claim of retaliatory discharge, finding that there was no evidence demonstrating that X Corp. was aware of Doe's intention to file a *qui tam* action when the termination decision was made. 816 F.Supp. at 1095–96.

gated this *qui tam* action on April 6, 1992 under the Civil False Claims Act ("False Claims Act" or "Act"), 31 U.S.C. §§ 3729–33 (1994).

As required under § 3730(b)(2) of the Act, Doe served a copy of the complaint, a statement of material facts, and copies of the supporting documents on the Attorney General of the United States and on the United States Attorney for the Eastern District of Virginia. Also pursuant to § 3730(b)(2), the entire matter was placed under seal. Prudently, the government notified the Court of concerns it had regarding whether some of these documents should be shielded from government view given Doe's status as X Corp.'s former counsel. In response, the Court ordered the government to surrender the documents it received from Doe and subsequently placed those documents under seal, along with the rest of the case.[6] The Court then held this *qui tam* proceeding in abeyance pending resolution of the issue of whether Doe's disclosure of X Corp.'s documents would run afoul of a lawyer's duty to preserve his client's confidences and secrets. Having described in detail the legal standards governing this question in *X Corp. I*, the Court then concluded in *X Corp. II* that any disclosure of these documents by Doe would violate Doe's ethical duty of confidentiality toward X Corp.[7] As a result, Doe was permanently enjoined from voluntarily disclosing to others the confidential information he obtained during his representation of X Corp. In furtherance of this injunction, and by order dated March 26, 1993, the government was directed to relinquish the original and all copies of Doe's statement of material facts so that they could be destroyed by Doe's counsel. In addition, the copies of X Corp. documents that the Court had removed from government possession and placed under seal were returned to X Corp. Thus, as a practical effect of *X Corp. II*, the government in this action could not make use of any confidential information acquired by Doe during his employment at X Corp. As a result, Doe's substantive contribution to this *qui tam* suit effectively has been reduced to his complaint.[8]

Following the issuance of *X Corp. II*, and before the expiration of the government's time to elect whether to intervene in the case,[9] the government and X Corp. settled the underlying dispute for the sum of $300,000. Thus, the question of whether X Corp. defrauded the government is no longer before the Court. Instead, left for resolution are several motions. Doe has moved to dismiss the case in light of the settlement agreement between the government and X Corp. At the same time, Doe has requested that he be awarded 25% of the settlement proceeds pursuant to his role as a relator in this action. He has also petitioned for attorneys fees and costs. Although the government does not oppose Doe's motion to dismiss and agrees that Doe is entitled to an award under the Act, it contends that the proper statutory award is only 15% of the settlement amount. For its part, X Corp. is unhappy with Doe's involvement in this action and opposes Doe's motion to dismiss. It contends that given Doe's status as X Corp.'s former attorney, as well as his limited contribution to this action, Doe cannot properly be a relator under the Act and is consequently barred from participating in this action. On

---

6. Doe determined which documents were relevant to this action. The government was ordered to return to Doe all documents not labeled as relevant.

7. In deciding whether Doe could justifiably disclose confidential client information under the "ongoing fraud" exception to the lawyer's duty of confidentiality, the Court held that Doe did not satisfy his burden of showing that in light of the documents and information in his possession, "a reasonable attorney in the same circumstances would find *convincing evidence* of the alleged fraudulent activities." *X Corp. II*, 816 F.Supp. at 1091 (quoting *X Corp. I*, 805 F.Supp. at 1308–09).

8. In a letter to the Attorney General dated May 26, 1993, Doe acknowledged that "substantially all material evidence and information relator [Doe] now possesses, which he is permitted by law to disclose, is contained in the Complaint in this action."

9. Under section 3730(b)(2) of the Act, "[t]he Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." The government requested and was granted several extensions of time to determine whether to intervene.

these grounds, X Corp. has filed its own motion to dismiss, or in the alternative, for summary judgment. For the same reasons, X Corp. also opposes letting Doe share in any part of the settlement proceeds. As a final matter, X Corp. has moved to maintain the entire file under seal, a motion opposed by the government and Doe.

## III.

Analysis properly begins with the terms of the False Claims Act itself.[10] As the name suggests, the Act prohibits fraudulent claims for payment made against the government. 31 U.S.C. § 3729 (1994). Congress recognized that "[d]etecting fraud is usually very difficult without the cooperation of individuals who are either close observers or otherwise involved in the fraudulent activity," S.Rep. No. 345, 99th Cong., 2d Sess. 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5269, and, therefore, provided in the Act a mechanism by which "private persons" could benefit financially from coming forward with information regarding the entity's fraudulent practices. 31 U.S.C. § 3730(b). Specifically, with certain enumerated exceptions, any private person may file suit against the alleged defrauder in the name of the government. *Id.* The individual must serve the government with "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possess," after which the government may subsequently elect to intervene in the litigation. 31 U.S.C. § 3730(b)(2). Following successful prosecution or settlement of the action, the relator is entitled to a percentage of the litigation or settlement proceeds. 31 U.S.C. § 3730(d).

█ In defining the universe of possible *qui tam* relators, the Act starts with the broad pronouncement that "a person" (implying *any* person) may fill that role. 31 U.S.C. § 3730(b)(1). Subsequently, however, the Act excludes from the universe of possible relators four groups defined in terms of the nature of the action brought. 31 U.S.C. § 3730(e). Excluded are:

1. Any "action brought by a former or present member of the armed forces under [§ 3730(b) ] against a member of the armed forces arising out of such person's service in the armed forces," § 3730(e)(1);

2. Any "action brought under [§ 3730(b) ] against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought," § 3730(e)(2);

3. Any action "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party," § 3730(e)(3); and

4. Any action "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information," § 3730(e)(4).

Significantly, none of the enumerated exceptions to the universe of eligible relators includes lawyers, or lawyers suing their clients. This fact points persuasively to the conclusion that lawyers are not *per se* barred from serving as *qui tam* relators against former clients. As this Court noted in *Erickson v. American Institute of Biological Sciences,* 716 F.Supp. 908, 912 (E.D.Va.1989):

In defining the classes of persons eligible to bring qui tam actions, Congress had a choice: It could have chosen to make eligible as qui tam relators only certain defined groups of persons and exclude all others or it could have chosen to include all persons as eligible qui tam relators with certain

---

**10.** For a more complete explanation of the structure, history, and purpose of the False Claims

Act, see *Erickson v. American Institute of Biological Sciences,* 716 F.Supp. 908 (E.D.Va.1989).

specific exceptions. It chose the latter scheme.[11]

And, in so doing, and in choosing not to exclude lawyers, Congress made clear that lawyers are included in the universe of eligible *qui tam* relators. Thus, Doe, as "a person" whose action does not fit into one of the excluded groups, meets the initial qualifications to be a relator.

X Corp. protests that this result severely impinges upon the common law relationship between attorney and client and could not have been intended by Congress. To allow attorneys to act as *qui tam* plaintiffs against their own clients, X Corp. continues, would be to encourage attorneys to flout their ethical obligations and use their clients' confidential information to their own economic advantage. In the end, the argument goes, clients will be deterred from seeking legal advice regarding whether they are in compliance with the False Claims Act for fear that the consulted attorney will simply exploit the situation as an evidence-gathering opportunity for a profitable *qui tam* suit.

■■■■ This argument, despite its alarming tone, is unpersuasive. To begin with, X Corp.'s fears that the Act will encourage unscrupulous attorney conduct are exagger-

ated. Nothing in the False Claims Act preempts state statutes and rules that regulate an attorney's disclosure of client confidences.[12] The Act permits "a person" to file a *qui tam* suit; it does not require him to do so. Nor does the Act immunize a relator for actions taken in pursuance of a *qui tam* action that violate state law. Therefore, where an attorney's disclosure of client confidences is prohibited by state law in a given circumstance, that attorney risks subjecting himself to corresponding state disciplinary proceedings should he attempt to make the disclosure in a *qui tam* suit. Moreover, clients who anticipate an attorney's unlawful disclosure of their confidential information may seek injunctive or declaratory relief in advance.[13] While the False Claims Act permits any person, with four enumerated exceptions, to bring a *qui tam* suit, it does not authorize that person to violate state laws in the process. Given this, and given the existence of state disciplinary powers over attorneys, there remain significant incentives for attorneys to abide by their state law confidentiality obligations. And to the extent that state law permits a disclosure of client confidences, such as to prevent a future or ongoing crime or fraud,[14] then the attorney's use

**11.** Because government employees, the contested relator group in *Erickson*, did not appear in the list of statutory exclusions, this Court concluded that they were, by necessary implication, included. *Id.* at 913 ("The inference invited by Congress' choice on structure is compelling: Government employees are included in the general universe of permissible qui tam plaintiffs unless, in the particular circumstances, they fall into one of the four specifically defined excluded groups.").

**12.** In determining whether a federal statute preempts state law, courts must look to Congressional intent. *See, e.g., Cipollone v. Liggett Group, Inc.*, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (courts must "start[ ] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). In this case, Congress expressed no intent in the Act to preempt state laws governing the attorney-client relationship. Nor is such an intent reasonably implied. The attorney-client relationship is a subject traditionally regulated by the states. *See, e.g., Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978) (a lawyer's solicitation of a client "falls within the

State's proper sphere of economic and professional regulation.") Absent clear legislative intent to upset this settled practice, state law regarding the attorney-client relationship cannot be deemed preempted.

**13.** Indeed, X Corp. itself took advantage of the injunctive remedy in this case. See *X Corp. II*, 816 F.Supp. at 1095 (Doe was permanently enjoined from voluntarily revealing X Corp.'s confidential information). And, if Doe's attempted disclosures violate relevant state law, then state authorities can pursue disciplinary proceedings.

**14.** *See, e.g.*, Virginia Code of Professional Responsibility DR 4–101(C)(3) (1994) (permitting an attorney to disclose client confidences and secrets "which clearly establish[ ] that [the] client has, in the course of the representation, perpetuated upon a third party a fraud related to the subject matter of the representation"); Ohio Code of Professional Responsibility DR 4–101(C)(3) (1994) (permitting an attorney to disclose "[t]he intention of his client to commit a crime and the information necessary to prevent the crime"); New York Code of Professional Responsibility DR 4–101(C)(3) (1994) (same as previous).

of the *qui tam* mechanism to expose that fraud should be encouraged, not deterred.

There is, moreover, another compelling reason to reject X Corp.'s argument. While X Corp. may believe that public policy considerations counsel toward excluding attorneys from the realm of potential *qui tam* relators, the fact remains that Congress has not done so. Congress, in plain language, carefully fashioned specific exclusions to the class of eligible relators, and those exclusions did not include attorneys. Nor is this one of those rare cases where adherence to the plain statutory language produces such absurd and strange results that departure from the strict statutory terms is necessary to effectuate Congressional intent. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989); *Sheridan v. United States*, 487 U.S. 392, 402–03, 108 S.Ct. 2449, 2455–57, 101 L.Ed.2d 352 (1988). Indeed, the contrary is true here. The Congressional purpose underlying the *qui tam* provisions is "to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S.Rep. No. 345, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. And this purpose is undeniably served by allowing attorneys, as the Act does, to report their clients' ongoing or planned fraudulent practices against the government.

Also worth noting is that lawyers are not alone in having to maintain the confidences of employers. Corporate officers and others may also have a similar duty under state law under certain circumstances.[15] Yet, there can be no doubt that the Act does not preclude such persons from serving as relators, for a central goal of the Act is to encourage employees to come forward with information regarding their employers' fraudulent conduct.[16] *Id.* (citing employees' reluctance to report employers' fraud as reason for expanding *qui tam* jurisdiction). *See also*, Robert E. Johnston, 1001 Attorneys General: Executive–Employee *Qui Tam* Suits and the Constitution, 62 Geo.Wash.L.Rev. 609, 613–14 (1994) (citing "'conspiracy of silence' among government regulators and employees of government contractors" as Congress' reason for strengthening *qui tam* provisions). In arguing that lawyers should be singled out as a group from other employees and excluded from relator status under the Act, X Corp. urges the Court to perform what is essentially a legislative task, one that must be undertaken by Congress, not by the courts.

Distilled to its essence, the holding in this case follows the general rule that the *qui tam* statute does not exclude lawyers or members of any particular profession from being relators, nor does it preclude or preempt state law from making certain individuals subject to certain obligations which may, in certain circumstances, have the incidental effect of preventing those individuals from being relators.

### IV.

X Corp. next contends that even assuming that Doe's status as an attorney does not bar him from being a relator in this action, Doe cannot be a relator because he failed to satisfy various of the Act's requirements. Specifically, X Corp. argues that Doe did not fulfill the condition in § 3730(b)(2) that the relator serve "[a] copy of the complaint and written disclosure of substantially all material evidence and information [the

---

15. *See, e.g., Bull v. Logetronics, Inc.*, 323 F.Supp. 115, 132–33 (E.D.Va.1971); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327, 1341, 267 Cal.Rptr. 787 (Ct.App.), *cert. denied*, 498 U.S. 940, 111 S.Ct. 347, 112 L.Ed.2d 311 (1990); *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 859 (Mo.Ct.App.1986) (citing *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191 n. 5 (5th Cir.1984); *Barnhill v. Board of Regents of the UW Sys.*, 158 Wis.2d 278, 462 N.W.2d 249, 267 (1990) (citing Restatement (Second) of Agency § 395 (1958)), *rev'd on other grounds*, 166 Wis.2d 395, 479 N.W.2d 917 (1992). *See also*, 53 Am. Jur.2d *Master & Servant* § 104 (1970).

16. This is not to suggest that a lawyer's duty of confidentiality toward her client is no different from a corporate officer's fiduciary duty toward her employer. Clearly, there are strong public policy reasons reflected in state law for prohibiting an attorney from disclosing her client's past fraud, especially when the client is seeking representation with respect to that fraud, that do not apply in the general employee/employer relationship. In any event, the Act excludes neither corporate officers nor attorneys.

relator] possess" on the government. Although Doe initially served a copy of the complaint and a written disclosure on the government, the injunction issued in *X Corp. II* required the government to relinquish Doe's written disclosure. Therefore, X Corp. argues, Doe never satisfied § 3730(b)(2). Doe counters that he served the government with a copy of the complaint, and when enjoined from disclosing any of X Corp.'s confidential information, he sent the government a letter explaining that the complaint contained all of the material evidence and information that he was entitled under law to disclose. Doe claims that this letter, together with the complaint, serves as his "written disclosure" and is sufficient in the circumstances to satisfy the § 3730(b)(2) requirement.

While the Act, by its terms, requires putative relators to submit two separate documents—a complaint and a written disclosure—nothing in the Act precludes a relator from including all of her evidence and information in the complaint and then submitting a separate "written disclosure" that merely incorporates, rather than repeats, the evidence and information in the complaint. To read the Act as requiring a pointless repetition of information already contained in the complaint is to elevate form over substance in a manner compelled by neither the Act's terms nor its purpose. Therefore, the fact that Doe submitted as his written disclosure a letter referencing the substance of the complaint, rather than repeating the information contained in the complaint, does not violate the requirements of § 3730(b)(2) or preclude Doe from serving as a relator.

■ But this is not the end of the analysis. The final hurdle confronting Doe in his endeavor to be a relator concerns his ability to serve a copy of the complaint on the government, as required by § 3730(b)(2) of the Act, yet still remain faithful to the terms of the injunction issued in *X Corp. II*. If the information contained in the complaint falls under the umbrella of materials and information that Doe was enjoined from disclosing to others in *X Corp. II*, then he cannot use the complaint to meet the requirements of § 3730(b)(2).

■ As noted earlier, X Corp. initiated *X Corp. II* to resolve the legality of Doe's disclosing certain of X Corp.'s documents and information to others. Because at that time, unbeknownst to X Corp.,[17] Doe had already filed the complaint in this action, all proceedings in this action were held in abeyance pending resolution of *X Corp. II*. And, as a result of *X Corp. II*, Doe was "permanently enjoined from voluntarily disclosing X Corp.'s confidences and secrets" and was ordered to return X Corp.'s confidential documents. 816 F.Supp. at 1095. Apart from certain background information regarding the parties, the factual information in Doe's complaint clearly falls within the coverage of the injunction. It was only through confidential communications with X Corp. employees and by review of some confidential documents that Doe learned all of the alleged "facts"[18] supporting his allegations that X Corp. was perpetrating a fraud on the government. This information certainly constitutes "X Corp.'s confidences and secrets," and Doe's use of the information to form the basis of his complaint is at odds with the terms and purpose of the injunction. Therefore, Doe cannot lawfully rely upon the complaint and the information therein to meet the § 3730(b)(2) requirements. Without the complaint, Doe cannot satisfy these requirements. In essence, this case presents the situation, discussed earlier, where state law has the incidental effect of precluding an attorney from being a relator in certain circumstances. Because the complaint contains X Corp.'s confidences and secrets, which Doe has been enjoined under state law from dis-

---

**17.** Pursuant to § 3730(b)(2), the complaint in a *qui tam* action is filed under seal, and service of the complaint on the defendant is delayed for a period of 60 days. This procedure gives the government sufficient time to investigate the basis of the complaint without "tipping off" the defendant or others to possible concurrent criminal investigations. *See* S.Rep. No. 345, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266.

**18.** Worth noting is that the settlement rendered it unnecessary for the Court to consider whether X Corp. actually committed the alleged fraud.

closing,[19] Doe cannot serve as a relator in this action.[20]

In sum, neither Doe's status as an attorney, nor his use of a letter referencing the material contained in the complaint as his "written disclosure," bars Doe from serving as a relator in this action. Doe cannot be a relator in this action for the sole reason that he does not possess enough information that he may legally disclose to form the basis of a valid complaint against X Corp.

## V.

■ The final issue for resolution is whether to maintain the court file of this case permanently under seal, as X Corp. requests. A significant part of the seal issue has already been resolved in a manner that points persuasively against permanently sealing the court record. Following the X Corp.-government settlement, X Corp. asked the Court to preserve the seal over the *qui tam* complaint. In particular, X Corp. feared embarrassment from publication of the fact that its former house counsel accused it of fraudulent practices. Accordingly, X Corp. sought to prevent the government, in connection with publishing the settlement agreement, from publicly disclosing Doe's identity and former position with the company.[21] By order dated January 21, 1994, this Court ruled that the complaint should not remain under seal, finding that Doe's identity and position were not confidential information protected by the injunction issued in *X Corp. II*. Removal of the complaint's seal was stayed pending appellate review. A panel of the Fourth Circuit affirmed this Court's decision to lift the seal on June 27, 1994. *Under Seal v. Under Seal*, No. 94–1171, 1994 WL 283977, 1994 U.S.App. LEXIS 16117 (4th Cir. June 27,

1994) (per curiam) (unpublished). Accordingly, the complaint in this action, including its references to the identities of Doe and X Corp., is no longer under seal.

■ The question remaining, then, is whether to retain or lift the seal over the remainder of the case file. The proper starting point in resolving this issue is to acknowledge the firmly rooted common law right of the public to have access to records of judicial proceedings. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). *See also Under Seal*, 1994 WL 283977 at *1–2, 1994 U.S.App. LEXIS 16117 at *5 (citing in part *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 326 (4th Cir.), *cert. denied*, 500 U.S. 944, 111 S.Ct. 2243, 114 L.Ed.2d 484 (1991)); *Stone v. University of Maryland Medical Sys. Corp.*, 855 F.2d 178, 180 (4th Cir.1988)). In addition, as the Fourth Circuit pointed out in affirming the unsealing of the complaint in this case, there is an even stronger justification for public access to judicial records where, as here, the proceedings consist of matters involving the operation of government. *See Under Seal*, 1994 WL 283977 at *2, 1994 U.S.App. LEXIS 16117 at *6 (citing, in part, *Smith v. United States Dist. Court*, 956 F.2d 647, 650 (7th Cir.1992)). *See also F.T.C. v. Standard Fin. Management Corp.*, 830 F.2d 404, 410 (1st Cir.1987) (stating that "[t]he appropriateness of making court files accessible is accentuated in cases where the government is a party"). Although special circumstances may justify preventing public exposure to such records, the party seeking to retain the seal must show "some significant interest that outweighs the presumption" of public access.

---

**19.** Although the complaint contains confidential information covered by the injunction, it nonetheless became public owing to the government's publication of the X Corp.-government settlement agreement, which document essentially repeats the complaint's allegations.

**20.** It is worth emphasizing that there may be some circumstances where an attorney possesses both classes of client information, namely (1) information that he is permitted under state law to disclose, such as information clearly showing an ongoing or future crime or fraud, and (2) information that he is obligated under state law

to keep confidential. In that event, nothing prohibits the attorney from filing a *qui tam* complaint and serving as the relator with respect to that information permitted to be disclosed under state law.

**21.** The government's publication of the settlement agreement effectively made the complaint public because the agreement included the complaint's fraud allegations. After publication of the settlement agreement, only Doe's identity and position at X Corp. remained unpublished, and, thus, constituted the focus of the debate over whether to unseal the complaint.

*Under Seal,* 1994 WL 283977 at *2, 1994 U.S.App. LEXIS 16117 at *7 (quoting *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988)).

No such significant interest exists here. X Corp.'s central interest in maintaining the records of this proceeding under seal is to prevent disclosure of Doe's identity and former position as an attorney with the company. X Corp. contends that this information is confidential and would violate the spirit of the injunction issued against Doe in *X Corp. II.* Yet, as noted, this issue has already been resolved against X Corp. *See Under Seal,* 1994 WL 283977, 1994 U.S.App. LEXIS 16117. Given this, there is no persuasive justification for shielding the remainder of the court file from public view, except for any pleadings or papers that contain or reveal material covered by the injunction.

For the reasons stated herein, the Court dismisses this action on the grounds that Doe is not an eligible relator. Accordingly, the Court **DENIES** Doe's motion to dismiss and **DENIES,** as moot, X Corp.'s motion to dismiss or, in the alternative, for summary judgment. Doe's motion for an award of the settlement proceeds and request for attorneys' fees and costs are **DENIED** as moot. Finally, the Court **DENIES** X Corp.'s motion to maintain the records in this case under seal, except as to those court pleadings and papers that include or reveal confidential material covered by the *X Corp. II* injunction.