[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16479
_____

D.C. Docket No. 3:13-cv-00174-TJC-MCR


RENE ALVAREZ, ET AL.,

Plaintiff - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 17, 2017)

Before CARNES, Chief Judge, ROSENBAUM and HIGGINBOTHAM,[*] Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Current and former federal law enforcement employees and their spouses deceived into investing in a Ponzi scheme presenting as the Federal Employee Benefits Group, Inc. ("FEBG") Bond Fund seek relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), asserting claims of negligent conduct and aiding and abetting the scheme. The Government moved to dismiss for lack of subject matter jurisdiction, relying upon the misrepresentation and discretionary function exceptions to the FTCA. The district court agreed that the misrepresentation exception applied and dismissed. We now AFFIRM.

## I.

Around 1988, Kenneth Wayne McLeod began contracting with various federal agencies to provide retirement advice to federal employees. McLeod founded and ran the FEBG Bond Fund. Most of the Plaintiffs met McLeod at retirement seminars hosted by their agency employer, where McLeod spoke generally about finances and retirement and also pitched his fund. McLeod would sometimes follow up with individual employees, promising high, secure returns in the FEBG Bond Fund. Several Plaintiffs "invested" their life savings.

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Around 2008, McLeod's company began experiencing financial trouble. In 2010, a duped investor complained to the United States Securities and Exchange Commission, and on June 17, 2010, McLeod admitted the fund was a Ponzi scheme. Shortly thereafter, he committed suicide.

Plaintiffs sued the United States under the FTCA. They filed their original complaint on February 19, 2013, alleging five counts against various federal agencies. The United States moved to dismiss for lack of subject matter jurisdiction and improper venue, alternatively for a stay. After a hearing, the district court denied the Government's motion without prejudice and allowed discovery to proceed, finding that it needed a more developed record to resolve the challenge to jurisdiction. Additional motions,[1] another hearing, discovery, an unsuccessful settlement effort, and an amended complaint followed. Notably, Plaintiffs' amended complaint alleged that McLeod was a government employee, not a contractor, a contention they stood by in defending the court's jurisdiction.

Plaintiffs' amended complaint contained six counts. Count I alleged McLeod was negligent *per se* for selling unregistered securities which violated the Florida Securities and Investor Protection Act. Count II alleged that government employees aided and abetted McLeod in his sale of unregistered securities. Count III alleged common law negligence, including breach of an employer/employee

---

[1] On May 15, 2015, the Government moved to dismiss, which the district court granted. The district court allowed Plaintiffs to file an amended complaint.

duty of care, based on a number of theories. Plaintiffs additionally alleged that government employees negligently failed to supervise McLeod. Count IV alleged breach of fiduciary duty by, for example, allowing prohibited commercial solicitation. Count V alleged negligent supervision, and count VI alleged negligent infliction of emotional distress. The Government again moved to dismiss for lack of subject matter jurisdiction.

On September 12, 2016, the district court found Plaintiffs' claims barred by sovereign immunity, focusing its ruling upon the misrepresentation exception to the FTCA. Important to the arguments on appeal, the district court accepted Plaintiffs' new allegation that McLeod acted as a United States employee for FTCA purposes. As the court recounted:

> [P]laintiffs have at times altered their primary theories of liability to try to state a viable FTCA claim. Also, the Court granted plaintiffs an opportunity to conduct extensive jurisdictional discovery to try to support their claims. The current and final iteration of their case is premised on the contention that McLeod was an 'employee' of the United States when he committed his wrongs. All causes of action in the amended complaint assume that McLeod was an employee. While this is different from plaintiffs' earlier contention that McLeod was not an employee [citations omitted], the Court assumes for purposes of testing plaintiffs' claims that McLeod was an employee of the United States.

Upon analyzing Plaintiffs' "best case,"[2] the district court found that two "paradigm plaintiffs [could not] demonstrate that subject matter jurisdiction [was] proper." The district court found that Plaintiffs' injuries from counts I and II—negligence *per se* for McLeod's selling unregistered securities, and governmental aiding and abetting—"flow[ed] from the securities and McLeod's representations which underlay them being fraudulent, not because they were unregistered." The court therefore found that McLeod's failure to register was not an independent cause of Plaintiffs' harm. As for the other counts, the district court found that the "crucial component of plaintiffs' claims . . . is that McLeod . . . lied about the bona fides of the FEBG Bond Fund, and other government employees, either expressly or impliedly, convinced plaintiffs to trust McLeod and invest with him." The court concluded that Plaintiffs' injuries were "dependent" on the misrepresentations and omissions of McLeod and other governmental employees, and were consequently barred.

Plaintiffs appeal.

---

[2] The court thus "put[] aside those investors who were not employed by the government, those who did not invest in the FEBG Bond Fund but hired McLeod to manage their investment portfolio, those who did not meet McLeod at a government-sponsored seminar or who did not attend a seminar at a GSA-controlled venue." It also presumed a plaintiff who lived in Florida for venue purposes, and identified two plaintiffs who fit this criteria.

## II.

"We review a district court's dismissal of an action for lack of subject matter jurisdiction *de novo*."[3] Unless it consents, the United States retains sovereign immunity from suit.[4] Relevant here, the United States has waived its immunity for claims under the FTCA.[5] "[W]hile the FTCA, as a general matter, waives what would otherwise be the federal government's sovereign immunity from legal actions for torts committed by its employees, there are exceptions to that general waiver."[6] "[A] court must strictly observe the 'limitations and conditions upon which the Government consents to be sued' and cannot imply exceptions not present within the terms of the waiver."[7] One such exception is the intentional tort exception, which bars:

> [a]ny claim *arising out of* assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights . . .[8]

"[A] claim will be deemed to have arisen from a § 2680 excepted tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort. And this is so even if the plaintiff has denominated, as

---

[3] *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 168 (2015) (citation omitted).

[4] *Id.*

[5] *Douglas v. United States*, 814 F.3d 1268, 1280 (11th Cir. 2016) (Tjoflat, J., concurring).

[6] *Zelaya*, 781 F.3d at 1321.

[7] *Id.* at 1322 (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

[8] 28 U.S.C. § 2680(h) (emphasis added).

6

the basis for the cause of action, a tort not found within § 2680(h)'s list of excepted torts."[9]

One of the excepted torts is misrepresentation. "The Supreme Court has characterized 'misrepresentation' as being a breach of the 'duty to use due care in obtaining and communicating information upon which [another] may reasonably be expected to rely in the conduct of his economic affairs.'"[10] "Accordingly, 'the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies.'"[11] "The misrepresentation exception encompasses failure to communicate as well as miscommunication."[12] "The test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information."[13] In determining whether the exception applies, "it is 'the substance of the claim and not the language used in stating it which controls.'"[14]

---

[9] *Zelaya*, 781 F.3d at 1333 (citations omitted).

[10] *Id.* at 1334 (quoting *United States v. Neustadt*, 366 U.S. 696, 706 (1961)).

[11] *Id.* (quoting *Block v. Neal*, 460 U.S. 289, 296 (1983)); *accord Block*, 460 U.S. at 296 n.5 ("The 'misrepresentation' exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which has been identified with the common law action of deceit, and has been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings." (some internal quotation marks omitted)).

[12] *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1265 n.3 (11th Cir. 2000).

[13] *Id.* at 1264 (citations omitted).

[14] *Zelaya*, 781 F.3d at 1334 (citation omitted).

## A.

We first turn to the district court's dismissal of Plaintiffs' count I claim against McLeod. Assuming McLeod is a government employee—as Plaintiffs did in their amended complaint—Plaintiffs' claim of negligence *per se* for unregistered securities arises out of misrepresentation. As the district court correctly explained, "had the FEBG Bond Fund been legitimate, the fact of its being unregistered would have had no effect on plaintiffs. And conversely, if McLeod had registered the fraudulent securities (lying about them to do so since they didn't exist), plaintiffs would still have suffered the same harm. Plaintiffs' injuries flow from the securities and McLeod's representations which underlay them being fraudulent, not because they were unregistered." Said differently, even though Plaintiffs have "denominated, as the basis for the cause of action, a tort not found within § 2680(h)'s list of excepted torts" McLeod's misrepresentations are nevertheless "the governmental conduct that is essential to the plaintiff[s'] cause of action."[15]

And even if McLeod is not considered a government employee—which Plaintiffs at times hint at throughout their briefing—then Plaintiffs cannot recover against him under the FTCA, which allows recovery for only injuries "caused by the negligent or wrongful act or omission of any *employee* of the Government[.]"[16]

---

[15] *Zelaya*, 781 F.3d at 1333 (citations omitted).
[16] 28 U.S.C. § 1346(b)(1) (emphasis added).

Accordingly, Plaintiffs' count I claim is either barred by the misrepresentation exception or is not actionable under the FTCA.

## B.

Plaintiffs' other claims are similarly barred by the FTCA's intentional tort exception because they "aris[e] out of . . . misrepresentation,"[17] and, contrary to Plaintiffs' contention, *Sheridan v. United States*[18] does not save them.

## 1.

In *Zelaya v. United States*, plaintiffs were victims of Allen Stanford's Ponzi scheme.[19] They sued under the FTCA alleging the SEC was negligent for failing to notify an investor protection group about the scheme.[20] This Court "examine[d] Plaintiffs' notification claim to determine if [it] [wa]s based on the communication or miscommunication of information upon which others might be expected to rely in economic matters."[21] If it was, the Court explained, "and if a flawed communication caused the Plaintiffs' injury, then Plaintiffs' claim [would] be construed as a misrepresentation claim[.]"[22] Emphasizing that the misrepresentation exception includes both miscommunications and non-

---

[17] 28 U.S.C. § 2680(h).

[18] 487 U.S. 392 (1988).

[19] Ze*laya*, 781 F.3d at 1318.

[20] *Id.* at 1318–20. Plaintiffs' claim derived from the alleged violation of a statutory duty in the Securities Investor Protection Act. *See id.* at 1333.

[21] *Id.* at 1334.

[22] *Id.*

9

communications,[23] the Court found that plaintiffs' claim was grounded in the SEC's non-communication of financial information.[24] Consequently, the misrepresentation exception applied.[25]

In reaching this outcome, the *Zelaya* Court sifted through the applicable case law, separating cases in which the misrepresentation exception applied from those in which it did not, developing guidance for future cases in the process. For instance, failure-to-warn cases which do not involve injuries arising from "commercial decisions based on the governments' misrepresentations" are not barred by the misrepresentation exception.[26] Nor are cases in which the Government's breach of an independent "operational" duty causes the injury.[27] The Court explained, "if a plaintiff can show that the Government has breached a duty distinct from the duty not to make a misrepresentation and if that breach [] caused the plaintiff's injury, the fact that the Government may have also made a misrepresentation will be insufficient to trigger the misrepresentation exception[.]"[28]

Plaintiffs argue that the district court read *Zelaya* too broadly in finding it applied to bar their claims. They also attempt to distinguish *Zelaya* by claiming

---

[23] *See id.*
[24] *Id.* at 1335.
[25] *See id.*
[26] *Id.* at 1338.
[27] *Id.* at 1336.
[28] *Id.*

10

that in that case, "[t]here was no allegation . . . that the persons who failed to notify

the [Securities Investor Protection Corporation ("SIPC")] were not SEC employees

or were SEC employees acting outside the scope of their employment."

The Government responds by defending *Zelaya* as consistent with Supreme

Court doctrine. It argues that in this case, like in *Zelaya* and others,

"misrepresentation is the essence of plaintiffs' claims[.]"The Government suggests

that the alleged omissions during McLeod's seminars, which gave Plaintiffs

"undue confidence in McLeod's credibility," constitute misrepresentations.

The *Zelaya* Court made clear that "a claim will be deemed to have arisen

from a § 2680 excepted tort if the governmental conduct that is essential to the

plaintiff's cause of action is encompassed by that tort."[29] Plaintiffs alleged McLeod

was a government employee in their amended complaint. From this premise, it is

evident that the governmental conduct essential to Plaintiffs' causes of action was

McLeod's false statements about his bond fund—in other words, McLeod's

misrepresentations.

In this case, it is of no consequence that Plaintiffs characterize the alleged

breached duties as other than misrepresentation because "a plaintiff cannot

circumvent the misrepresentation exception simply through the artful pleading of

---

[29] *Zelaya*, 781 F.3d at 1333.

its claims."[30] Similarly, it does not matter that Plaintiffs alleged governmental employees other than McLeod breached such duties. On that point, *Zelaya* was clear: "if the governmental conduct that is essential to proving a plaintiff's claim would be covered by the misrepresentation exception, then the Government is shielded from liability by sovereign immunity, no matter how the plaintiff may have framed his claim or articulated his theory."[31]

In *JBP Acquisitions*, plaintiffs tried to escape the misrepresentation exception by arguing "that the Government was negligent in selling it [a] loan securing . . . Property and then continuing to act as though it had an ownership interest in the Property by negotiating a condemnation award with [the Metropolitan Atlanta Olympic Games Authority]."[32] The court rejected the plaintiffs' argument, finding that it was actually the Government's failure to communicate certain information to the plaintiffs and misrepresentations regarding its ownership that constituted the basis of the negligence claims.[33] Similarly, the basis of Plaintiffs' claims in the present case are McLeod's misrepresentations about his phony bond fund.

McLeod aside, the alleged negligent conduct of the various agency employees yet falls within the misrepresentation exception. This Court has

---

[30] *JBP Acquisitions*, 224 F.3d at 1264 (citations omitted).
[31] *Zelaya*, 781 F.3d at 1334.
[32] *JBP Acquisitions*, 224 F.3d at 1265.
[33] *See id.*

explained that "[t]he [misrepresentation] exception covers actions for negligence when the basis for the negligence action is an underlying claim for misrepresentation."[34] The alleged negligent conduct of the agency employees stems from both their failure to stop McLeod's solicitation (non-communications) and their endorsement of McLeod (miscommunications). Each of the allegations in Plaintiffs' remaining five counts falls into one or the other.[35]

In count II, Plaintiffs alleged that various agency employees aided and abetted McLeod in violating the Florida Securities and Investor Protection Act. But, as explained, the underlying violation is barred by the misrepresentation exception, and in any event the alleged aiding and abetting is comprised of governmental miscommunications that McLeod and his services were legitimate.[36] In count III, Plaintiffs allege common law negligence in that various agency employees breached employer-based duties and the duty to act carefully by negligently failing to follow a bevy of policies, provisions, and regulations.[37] They

---

[34] *Id.* at 1264 (citations omitted).

[35] Plaintiffs must also demonstrate a state-law analogue for each of their claims. *Zelaya*, 781 F.3d at 1324 ("[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA. Instead, a state tort cause of action is a *sine qua non* of FTCA jurisdiction, and we have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action." (citations omitted)). However, like the district court, we need not decide this issue since we can affirm the dismissal for other reasons.

[36] For example, according to Plaintiffs, agency employees aided and abetted by scheduling private meetings with McLeod. Underlying this conduct is a claim of misrepresentation against the Government for endorsing McLeod and his services.

[37] For instance, an Office of Personnel Management ("OPM") policy prohibits commercial solicitation, as does a General Services Administration ("GSA") regulation.

additionally make claims of negligent failure to vet, investigate, and supervise

McLeod. Yet, the basis for each of the alleged breached duties is in fact the

Government's failure to communicate information about McLeod, as well as their

miscommunications in endorsing McLeod. Moreover, several of the claims

necessarily depend on finding that the Government breached its duty to use due

care in "communicating information upon which [Plaintiffs] may reasonably be

expected to rely in the conduct of [their] economic affairs.'"[38]

The essence of misrepresentation "whether negligent or intentional, is the

communication of misinformation on which the recipient relies.'"[39] The Ninth

Circuit has described that "[t]he key distinction in this area is between the

performance of operational tasks and the communication of information."[40]

Although some claims will implicate both,[41] the "essence of the complaint" here is

the Government's miscommunicating McLeod's legitimacy.[42] Said differently, the

Government's communication of misinformation here was far more than

"collateral."[43]

In count IV, Plaintiffs alleged breach of fiduciary duty by improperly

soliciting, promoting, failing to follow ethics laws, and failing to properly vet

---

[38] *United States v. Neustadt*, 366 U.S. 696, 706 (1961).
[39] *Zelaya*, 781 F.3d at 1334 (quoting *Block*, 460 U.S. at 296).
[40] *Guild v. United States*, 685 F.2d 324, 325 (9th Cir. 1982).
[41] *See, e.g.*, *Block*, 460 U.S. at 297–98.
[42] *Guild*, 685 F.2d at 326.
[43] *Id.*

McLeod and the FEBG. Soliciting and promoting are plainly acts of communication that fall within the misrepresentation exception. And although violating ethics rules and failing to vet offer an accurate description of the Government's conduct, it is not complete.[44] The Supreme Court instructed that we look to the "essence" of the claim to reach its footing.[45] Here, the essence "is the communication of misinformation on which [Plaintiffs] relie[d]."[46] The same is true for Plaintiffs' count V allegations of negligent supervision. Alleging the breached duty to be a failure to "supervise, direct and control," Plaintiffs strive but fail to circumvent the misrepresentation bar.[47] Finally, in count VI, Plaintiffs alleged negligent infliction of emotional distress ("NIED"), which "requires an adequately pled underlying claim of negligence."[48] Because any underlying negligence claims are covered by the misrepresentation exception, Plaintiffs' NIED claim is also barred. In short, like in *Zelaya*, "because Plaintiffs' claim[s] [are] focused on non-communication [and miscommunication] of financial information" by the various agency employees, "the misrepresentation exception

---

[44] *Guild*, 685 F.2d at 326 (key issue was "the correct characterization of the Government's conduct").

[45] *See Block*, 460 U.S. at 296–97.

[46] *Id.* at 296.

[47] *See Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986) ("[A] cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." (citation omitted)).

[48] *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam).

15

springs into action to prevent a waiver of the Government's sovereign immunity."[49]

Then there is the requirement of causation. To escape the misrepresentation exception in cases like this, *Zelaya* requires Plaintiffs not only to "show that the Government has breached a duty distinct from the duty not to make a misrepresentation" but also, critically, that "that breach . . . caused the plaintiff's injury."[50] In coming to that conclusion, the *Zelaya* decision relied on the Supreme Court's *Block v. Neal* decision, which said that the misrepresentation exception "relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements. . . . But it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty."[51]

Plaintiffs cannot make the required showings in this case. Their injuries are "wholly attributable to reliance on" misrepresentations.[52] In *Zelaya*, "[t]he injury Plaintiffs suffered . . . was the loss of their investment money, which is an economic injury arising from a commercial decision that Plaintiffs may not have

---

[49] *Zelaya*, 781 F.3d at 1335.
[50] *Id.* at 1336.
[51] *Block*, 460 U.S. at 297; *see Zelaya*, 781 F.3d at 1335–36.
[52] *Block*, 460 U.S. at 297.

made had the SEC notified SIPC of Stanford Group's financial frailty."[53] The injury Plaintiffs suffered in this case was also the loss of their investment money, "which is an economic injury arising from a commercial decision that Plaintiffs may not have made had" McLeod not peddled his fraudulent fund, and had agency employees not communicated McLeod's legitimacy. Plaintiffs emphasize that an injury can have more than one cause.[54] While correct as far as it goes, we must also determine whether the misrepresentation was central to the claim and injury.[55] In *JBP Acquisitions*, for instance, the Court determined that misrepresentations about the ownership of the loan are what made the Government's conduct negligent in the first place, and that without the misrepresentation, there would have been no injury.[56] The misrepresentation in *JM Mechanical Corporation*, on the other hand, was "[a] subsequent and collateral misrepresentation that merely aggravated the injury" which did "not suffice to invoke the misrepresentation exception."[57] Here, McLeod and the agency employees' misrepresentations are what made the

---

[53] *Zelaya*, 781 F.3d at 1338.

[54] For support, Plaintiffs cite to Justice Kennedy's non-binding concurrence in the judgment in *Sheridan*.

[55] *See JBP Acquisitions*, 224 F.3d at 1265.

[56] *See id.*

[57] *Zelaya*, 781 F.3d at 1336 (summarizing *JM Mechanical Corp. v. United States*, 716 F.2d 190, 191–95 (3d Cir. 1983)).

17

Government's conduct negligent and such misrepresentations were the primary cause of injury.[58]

## 2.

Plaintiffs' primary argument on appeal is that *Sheridan v. United States* offers their claims passage through the intentional tort gate.[59] In *Sheridan*, an intoxicated off-duty servicemember injured plaintiffs by shooting a rifle into their car.[60] Before doing so, three naval corpsmen had encountered the drunk serviceman inside a hospital.[61] "They attempted to take him to the emergency room, but he broke away . . . revealing the barrel of [a] rifle. At the sight of the rifle barrel, the corpsmen fled. They neither took further action to subdue [him], nor alerted the appropriate authorities[.]"[62] The plaintiffs sued the United States, "alleging that their injuries were caused by the Government's negligence in

---

[58] Plaintiffs point out that there are three Plaintiffs who "did not invest in the FEBG Bond Fund, but did hire McLeod to manage their retirement savings after attending an agency-sponsored retirement seminar. These three plaintiffs allege McLeod negligently managed their money." According to Plaintiffs, these three Plaintiffs did not rely on McLeod's misrepresentations about the Bond Fund. Nonetheless, they relied on McLeod's misrepresentations about his, and his business's, legitimacy. For example, as Plaintiffs explain in their amended complaint, "[a]lthough McLeod held himself out as an expert on the federal retirement system, he was, in reality, not capable of handling his own finances and retirement planning . . . McLeod claimed he held a masters degree in finance . . when in reality, McLeod never graduated from college." The misrepresentation exception applies.

[59] The Government contends that Plaintiffs waived their *Sheridan*-based argument. Although this contention has some force, *see Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990), we decline to reach it, because even if the argument is preserved, it fails.

[60] *Sheridan*, 487 U.S. at 393–94.

[61] *See id.* at 395.

[62] *Id.*

18

allowing [the serviceman] to leave the hospital with a loaded rifle in his possession."[63] The Supreme Court considered "whether petitioners' claim [was] one 'arising out of' an assault or battery within the meaning of 28 U.S.C. § 2680(h)."[64]

In a two-part analysis, the Court held that the claim was not barred by the intentional tort exception. In the first part of its analysis, the Court considered a "claim arising out of two tortious acts, one of which is an [intentional tort] and the other of which is a mere act of negligence."[65] The Court acknowledged that "in at least *some situations* the fact that an injury was directly caused by an [intentional tort] will not preclude liability against the Government for negligently allowing the [intentional tort] to occur."[66]

The Court recognized two theories. The first is that a claim does not arise "solely" or "predominantly" out of the intentional tort when there is an allegation of independent, antecedent negligence against the Government.[67] "Under this view, the assailant's individual involvement would not give rise to Government liability,

---

[63] *Id.* at 394.

[64] *Id.* (footnote omitted).

[65] *Id.* at 398; *accord id.* at 404 (Kennedy, J., concurring in the judgment) ("The question before us is how to interpret the intentional tort exception in the Federal Tort Claims Act . . . when a plaintiff's injury is caused both by an intentional tort and by negligence that precedes it.").

[66] *Id.* at 398 (majority opinion) (emphasis added).

[67] *Id*. at 399.

19

but antecedent negligence by Government agents could[.]"[68] But the Supreme

Court expressly declined to rely on this theory.[69]

The second theory—and the one relied on by the Court—is that "the

intentional tort exception is simply inapplicable to torts that fall outside the scope

of § 1346(b)'s general waiver."[70] The Court cited favorably to Justice (then Judge)

Harlan's reasoning in *Panella v. United States*,[71] which concluded that the

intentional tort exception "must be read against the rest of the Act."[72] Accordingly,

"[t]he exception should . . . be construed to apply only to claims that would

otherwise be authorized by the basic waiver of sovereign immunity."[73] Since the

FTCA's basic waiver only authorizes claims for injuries caused by government

employees acting in the scope of their employment,[74] an intentional tort by a non-

government employee, or a government employee acting outside the scope of

employment, could not furnish the basis of an FTCA claim.[75] Applied to *Sheridan*,

if the claim only involved the off-duty intoxicated servicemember—*i.e.*, a

government employee acting outside the scope of employment—plaintiffs would

---

[68] *Id.*

[69] *Id.* at 400.

[70] *Id.*

[71] 216 F.2d 622 (2d Cir. 1954).

[72] *Sheridan*, 487 U.S. at 400.

[73] *Id.*

[74] 28 U.S.C. § 1346(b)(1) (allowing claims for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . .").

[75] *See Sheridan*, 487 U.S. at 400.

have had no basis for suing the Government under the FTCA.[76] Without a viable

FTCA claim, the FTCA's intentional tort exception would be inapplicable.[77]

Turning to the first of these two theories, McLeod, who committed the

intentional tort of misrepresentation, is akin to the servicemember, who committed

the intentional tort of assault. Under the first theory, "[McLeod's] individual

involvement would not give rise to Government liability, but antecedent

negligence by Government agents could[.]"[78] However, this Circuit has not

adopted this theory, and we have been given no good reason to do so today.

Plaintiffs' negligence claims against agency defendants therefore cannot proceed

under the first theory.

Nor can they under the second. The *Sheridan* Court explained that "[b]y

voluntarily adopting [firearm] regulations . . . and by further voluntarily

undertaking to provide care to a person who was visibly drunk and visibly armed,

the Government assumed responsibility to 'perform [its] "good Samaritan" task in

---

[76] *See id.* at 401 ("If nothing more was involved here than the conduct of Carr at the time he shot at petitioners, there would be no basis for imposing liability on the Government. The tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to Government liability whether that conduct is intentional or merely negligent.").

[77] *Cf.* at 400 ("Since an assault by a person who was not employed by the Government could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees.").

[78] *Id.* at 399.

21

a careful manner.'"[79] The status of the intoxicated servicemember tortfeasor was irrelevant to this duty. The Court pointed out that the plaintiffs' allegations included those against "other Government employees who allowed a foreseeable assault and battery to occur," which "may furnish a basis for Government liability that is entirely independent of [the servicemember's] employment status."[80] The Court concluded, "in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the servicemember] was on a federal payroll."[81] The plaintiffs thus avoided the intentional tort bar because the Government's alleged negligence had nothing to do with the intoxicated servicemember's employment status. In this case, however, the Government's alleged negligence was closely connected to McLeod's employment status. Indeed, McLeod's presentments under the auspices of the Government were fundamental.

Plaintiffs urge that the agency employees who vouched for McLeod and failed to stop his solicitations are akin to the Navy corpsman in *Sheridan* who failed to stop the servicemember's assault. Just as the Navy corpsman undertook an

---

[79] *Sheridan*, 487 U.S. at 401 (footnote and citation omitted). Of note, "[t]he District Court and the Court of Appeals both assumed that petitioners' version of the facts would support recovery under Maryland law on a negligence theory if the naval hospital had been owned and operated by a private person." *Id.*

[80] *Id.*

[81] *Id.* at 402 (footnote omitted).

independent duty of care to protect people from a possible assault, Plaintiffs suggest the agency employees here had an independent duty to protect employees from impermissible solicitations and commercial activity. The Government contends that "McLeod's relationship with the government is at the heart of this case." It asserts that "Plaintiffs' theory of liability turns on the fact that the government contracted with McLeod's employer and that his appearance at government-arranged seminars gave plaintiffs undue confidence in McLeod's credibility."

As an initial matter, Plaintiffs' negligent supervision claims are "rooted in supervisor-supervisee relationships at work,"[82] and thus closely related to McLeod's employment status. All of Plaintiffs' other claims—no matter how framed—are similarly connected to McLeod's employment status as a governmental employee hired to help discharge the Government's duty to provide retirement assistance to its employees. Plaintiffs' insistence that the Government had antecedent, independent duties unrelated to McLeod's employment relationship is incorrect.

Ultimately, since Plaintiffs' claims arise out of McLeod's misrepresentations about his bond fund, 28 U.S.C. § 2680(h) bars Plaintiffs' claims. *Sheridan* does not

---

[82] *CNA v. United States* 535 F.3d 132, 149 (3d Cir. 2008). According to the Third Circuit, the *Sheridan* Court recognized "that negligent supervision claims are not covered by the independent negligence theory[.]" *Id.* at 149 n.10 (citations omitted).

alter the outcome because, unlike in that case, the Government's liability was not independent of McLeod's employment status.

## III.

Congress has delineated the Government's liability via the FTCA and its attendant exceptions. Concluding that the misrepresentation exception applies to bar Plaintiffs' claims, we AFFIRM.

ROSENBAUM, Circuit Judge, concurring specially:

In *Oliver Twist*, Mr. Bumble famously lamented, "If the law supposes that, the law is a ass—a idiot."[1]  Every once in a while, a case comes along where some might find Mr. Bumble's philosophy of the law apt.  This is one of those cases.

Here, more than 100 federal law-enforcement-agency employees and their family members were swindled out of millions and millions of dollars in their retirement savings by Kenneth Wayne McLeod—a man these plaintiffs' agencies brought onto federal property for the express purpose of, ironically, financially educating agency employees.  Because the agencies allegedly did not follow rules prohibiting speakers from soliciting federal employees and from dispensing personal financial advice, among other safeguards, McLeod was able to abuse his position and take advantage of the federal employees' trust in their agencies.  Now, troublingly, the plaintiffs have no recourse because sovereign immunity precludes suit against the government in these circumstances.

I agree that the panel correctly reaches this same conclusion.  But I write separately in an effort to prevent the harsh exception to the Federal Tort Claims Act's ("FTCA") waiver of sovereign immunity from being construed in the future any more broadly than it has been written and that the Supreme Court has interpreted it.  In particular, I respectfully disagree with the panel opinion's

---

[1] Charles Dickens, *Oliver Twist*, https://www.planetebook.com/ebooks/Oliver-Twist.pdf, at 617 (last visited July 6, 2017).

understanding of *Sheridan v. United States*, 487 U.S. 392 (1988), and with dicta from our decision in *Zelaya v. United States*, 781 F.3d 1315 (11th Cir. 2015).

## I.

As I have noted, I agree that the panel correctly concluded that the FTCA's waiver of sovereign immunity does not apply here.  As relevant in this case, the FTCA's exception from its waiver of sovereign immunity bars any claim "[a]rising out of . . . misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h).  Significantly, this language includes claims arising out of not only intentional misrepresentation but also negligent misrepresentation.  *See United States v. Neustadt*, 366 U.S. 696, 710 (1961).

When we consider whether this exception applies, we must identify the true "essence" of the plaintiff's claim, regardless of how the plaintiff may have pled her cause.  *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000) (citation omitted).  We have explained that the "essence" of negligent misrepresentation "involves the government's failure to use due care in obtaining and communicating information."  *Id.* (citing *Block v. Neal*, 460 U.S. 289, 296 (1983); *Neustadt*, 366 U.S. at 706-07).  And, more specifically, a claim is for negligent misrepresentation "when the loss suffered by the injured party is caused by the breach of . . . the duty to use due care in obtaining and

26

communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs." *Neustadt*, 366 U.S. at 706.

Here, all of the plaintiffs' claims are, at their essence, either claims of intentional misrepresentation or claims of negligent misrepresentation. To the extent that the complaint asserts claims against McLeod, these claims rely, at bottom, on the fact that McLeod defrauded them through material misrepresentations and omissions about what he was doing with their money.

And to the extent that the complaint makes claims against government employees for their independent negligence in vetting and investigating McLeod, in allowing him to solicit employees and offer personal financial investment advice, and in otherwise failing to follow regulations and government policy in permitting McLeod to speak at official agency-sponsored events and on federal property, all of these claims sound in negligent misrepresentation. This is necessarily so because even setting aside McLeod's intentional misrepresentations, all of plaintiffs' losses may be traced to the government's alleged "breach of . . . the duty to use due care in obtaining and communicating [financial-literacy] information upon which [the plaintiffs] . . . reasonably [could have been] expected to rely in the conduct of [their] economic affairs," *id.*; that is, to the government's own negligent misrepresentations.

27

Indeed, the entire purpose of the government's financial-literacy program was to financially educate federal employees in the hope that they would rely on the information and increase their retirement savings. *See* 5 U.S.C. § 8350 note on Pub. L. 108-469, § 2, 118 Stat. 3892 (2004).[2] Had the government followed its own policies and regulations that were put in place to ensure the use of due care in communicating financial-literacy information, McLeod either would not have been permitted to speak or, at the very least, would not have been allowed to solicit employees and offer them personal financial investment advice, regardless of the content of that advice. Either way, the plaintiffs would not have been defrauded by McLeod.

So all of plaintiffs' claims are, at their essence, claims for either intentional or negligent misrepresentation. As a result, § 2680(h), by its terms, precludes them all.

## II.

---

[2] This note provides, in relevant part,

> **(c) Strategy.**—As part of the retirement training offered by Office of Personnel Management under . . . [this section], the Office, in consultation with the Board, shall—
>
>> **(1)** Not later than 6 months after . . . [December 21, 2004], develop and implement a retirement financial literacy and education strategy for Federal employees that—
>> **(A)** shall educate Federal employees on the need for retirement savings and investment; and
>> **(B)** provide information related to how Federal employees can receive additional information on how to plan for retirement and calculated what their retirement investment should be in order to meet their retirement goals . . . .

For this same reason, this case is also distinguishable from *Sheridan*. There, as the panel correctly notes, an obviously drunken off-duty serviceman fired several shots at the plaintiffs after government employees allowed him to leave a naval hospital with a loaded rifle in his possession. The plaintiffs sued the government for the employees' negligence in allowing the serviceman to leave the hospital without reporting the situation.

Section 2680(h) excepts assault and battery from the FTCA's waiver of sovereign immunity, but it does not except negligence. So, like McLeod's intentional misrepresentations here, the assailant's tort in *Sheridan* would have been excluded from the FTCA's waiver, even had the assailant been acting in the scope of his government employment.

But notably, unlike misrepresentation, assault and battery has no negligent counterpart. And the government employees who let the drunken, armed assailant go without trying to stop him and without reporting the incident engaged in a separate act of negligence, not assault and battery or any other tort that § 2680(h) excepts. So unlike the acts of the government employees here who engaged in the excepted tort of negligent misrepresentation independent of McLeod's intentional misrepresentations, the acts of the government employees in *Sheridan* were not protected by sovereign immunity under the terms of § 2860(h). *See Sheridan*, 487 U.S. at 401.

29

This is where I would end my discussion of this case and of *Sheridan*: unlike in *Sheridan*, the essence of the government employees' acts in this case constituted an excepted tort under § 2680(h)—that of negligent misrepresentation. As a result, the FTCA bars recovery here.

But the panel's interpretation of *Sheridan* goes further. And I am concerned that some of what the panel says about *Sheridan* could be broadly construed to impose limitations that *Sheridan* did not on the FTCA's waiver of sovereign immunity. For that reason, I think it important to address two points in the panel's *Sheridan* discussion.

First, I am concerned that the panel's interpretation of *Sheridan* may be read to mistakenly suggest that *Sheridan*'s rule allowing claims against government employees for non-excepted torts applies only when the excepted tortfeasor (in the position of the drunken serviceman in *Sheridan* or McLeod here) did not act within the scope of government employment. And that would be in direct conflict with what *Sheridan* actually says.

In fact, the government-employee status of the excepted tortfeasor (in the position of the drunken serviceman in *Sheridan* or McLeod here) makes no difference to whether *Sheridan*'s rule applies. The Supreme Court expressly said so: "[the assailant serviceman's] employment status is irrelevant to the outcome" of the case. *Sheridan*, 487 U.S. at 403 n.8; *see also id*. ("Because . . . [the assailant

serviceman's] employment status . . . has [no] bearing on the basis for petitioners' claim for money damages, [§ 2680(h)] is not applicable in this case."). Rather, in and of itself, the excepted tort (that directly inflicts the injuries)—regardless of whether a government employee acting within the scope of his duties committed it—does not preclude liability against the government for conduct that is "entirely independent" of the tortfeasor's employment status. *Id.* at 401.

So even accepting the complaint's allegations that McLeod was a government employee and that he acted within the scope of his employment, McLeod's employment status, in and of itself, does not provide a basis under *Sheridan* for rejecting plaintiffs' claims based on *other* government employees' alleged breaches of a separate duty to follow government regulations and policy. Instead, plaintiffs' claims cannot succeed because the independent legal foundation of those claims against the responsible government agencies finds its basis in negligent misrepresentation, which is itself an excepted tort—without reference to McLeod's intentional tort of intentional misrepresentation.

Second, the panel opinion describes the two theories that the Supreme Court discussed in *Sheridan* to explain how liability might be imposed against government employees who negligently allowed an intentional tortfeasor to commit his tort. *See* Op. at 22-23. As the panel correctly notes, the Supreme Court relied exclusively on the second theory.

31

Nonetheless, the panel alternatively analyzes this case under the first *Sheridan* theory. It notes that "McLeod, who committed the intentional tort of misrepresentation, is akin to the servicemember, who committed the intentional tort of assault. Under the first theory, [McLeod's] individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could[.]" *Id.* at 22. (quoting *Sheridan*, 487 U.S. at 399). Ultimately, though, the panel rejects liability here because "this Circuit has not adopted this theory, and we have been given no good reason to do so today." *Id.*

In my view, we need not reach this consideration. Even if *Sheridan*'s first theory were binding law, it simply would not apply here. As I have noted, the government employees here (other than McLeod) allegedly engaged in negligent misrepresentation, which is an excepted tort, regardless of whether *Sheridan*'s first theory is valid. For that reason alone, the government employees' antecedent negligence at issue here could not give rise to government liability under the FTCA, and *Sheridan*'s first theory cannot help plaintiffs.

### III.

The panel opinion also invokes our decision in *Zelaya* in its discussion of causation. *See* Op. at 17. And while *Zelaya* certainly contains some valid and important points, I think no discussion of *Zelaya*'s causation analysis is complete without a word of caution about that opinion. *Zelaya* states, "The phrase 'arising

32

out of" [in § 2680(h)] is interpreted broadly to include all injuries that are dependent upon one of the listed torts having been committed." 781 F.3d at 1333 (citing *United States v. Shearer*, 473 U.S. 52, 55 (1985)). But, in my view, this statement of the law and the citation on which *Zelaya* bases it, are not good law for two reasons.

First, *Zelaya* relies solely on *Shearer* for that proposition. But *Shearer*'s entire discussion of § 2680(h)'s exceptions to the FTCA's waiver of sovereign immunity appears in Section II-A of the opinion—a part of the opinion that the majority did not adopt. *See id.* at 54-57. Instead, the Supreme Court's decision in *Shearer* was based solely on the *Feres* doctrine,[3] which precludes a soldier from recovering under the FTCA "for injuries which 'arise out of or are in the course of activity incident to service.'" *See Shearer*, 473 U.S. at 57-59. That doctrine, of course, has no application here.

And more significantly, the Court's holding in *Sheridan* necessarily rejected the *Shearer* plurality's analysis of the "arising out of" language in § 2680(h). In *Shearer*, an Army private's mother sued the Army for negligence because another serviceman kidnapped and murdered her son. She alleged that the Army knew that the other serviceman was dangerous, yet it failed to control him and to warn others that he was at large. In finding her claim barred, the plurality effectively

---

[3] *Feres v. United States*, 340 U.S. 135 (1950).

33

concluded that where a plaintiff's damages "stem from" an excepted tort under § 2680(h), an action based on a non-excepted tort "aris[es] out of" the excepted tort and likewise is prohibited. *See id.* at 55.

But *Sheridan* held that § 2680(h) did not preclude the plaintiffs' claims there, even though all their injuries were dependent on the drunken serviceman's assault and battery—an excepted tort. Had the *Shearer* plurality's reasoning ruled the day, *Sheridan* could not have reached this conclusion: though the plaintiffs alleged an independent cause of action for negligence against the government, the *Shearer* plurality would have concluded that their actual injuries "ar[ose] out of" the drunken serviceman's assault and battery and were thus barred. So it is clear that any suggestion that § 2680(h) bars all claims for which the injuries arose directly out of an excepted tort is overly broad, incorrect, and inconsistent with the governing law of *Sheridan*.

Fortunately, however, *Zelaya*'s suggestion in this regard is dicta, as our holding in *Zelaya* was actually based on the fact that all the plaintiffs' claims there were, at their essence, claims for the excepted tort of misrepresentation. In light of the panel's reliance on other aspects of *Zelaya*, I note this error in that opinion to prevent our opinion here from being viewed as endorsing all that *Zelaya* had to say.

**IV.**

34

The outcome in this case is troubling.  Yet it is one that the law clearly requires.  Nevertheless, I would limit any restraints this opinion could impose on future litigants by confining it to address only what is absolutely necessary.  Here, that means holding only that § 2680(h) precludes plaintiffs' claims because all of them are based on the excepted torts of either intentional misrepresentation or negligent misrepresentation.